772 P.2d 1164

Patricia DUNN, By and Through her Guardian and conservator, Daniel DUNN; Daniel Dunn, individually; Raymond S. Elliott, M.D.; Gynecology & Obstetrics of Mesa, Ltd., Petitioners,

v.

SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Frederick J. Martone, a judge thereof, Respondent Judge,

SAMARITAN HEALTH SERVICE, dba Desert Samaritan Hospital & Health Center; and Anca Maras, Real Parties in Interest.

No. 1 CA–SA 88–275.

Court of Appeals of Arizona, Division 1, Department A.

April 20, 1989.

Lowry & Froeb, P.C. by Donald F. Froeb, Scottsdale, for petitioners.

Lewis and Roca by John P. Frank, Robert J. Tolman, Foster Robberson, and Roger W. Kaufman, Phoenix, for real party in interest, Samaritan Health Service.

Snell & Wilmer by Lonnie J. Williams, Jr., Stephen M. Hopkins and Patrick G. Byrne, Phoenix, for real party in interest, Anca Maras, M.D.

## OPINION

JACOBSON, Judge.

In this special action, petitioners seek review of an order entered by the civil presiding judge of the superior court dishonoring their notice of change of judge as untimely, and refusing to reassign their case for trial to the stipulated judge, as required by Rule 42(f), Arizona Rules of Civil Procedure. Extraordinary relief by special action is appropriate when a respondent judge is required to transfer a cause to another judge and fails to do so. *See Helge v. Druke*, 136 Ariz. 434, 436, 666 P.2d 534, 536 (App.1983); *Consolidated Carpet Corp. v. Superior Court*, 13 Ariz. App. 429, 430, 477 P.2d 548, 549 (1970). In the exercise of our discretion, we therefore accept special action jurisdiction in this matter.

### Background

Petitioners are plaintiffs, and real parties in interest are defendants, in the underlying personal injury suit in superior court. Trial in this matter had been set for January 9, 1989, before the Honorable Joseph D. Howe. The parties agree that, at a status conference on November 3, 1988, they discussed with Judge Howe the possibility of utilizing a settlement conference to dispose of this case. Judge Howe advised counsel that he could not act as both trial judge and settlement judge. Judge Howe asked if any party had a notice of change of judge remaining; when plaintiffs' counsel indicated that he did, Judge Howe indicated that he would honor such a request. Judge Howe memorialized this conversation in his minute entry as follows: "He [plaintiffs' counsel] asks if I am serious about honoring a notice of change of judge; I say yes, unless there is objection, in which case the matter comes back to me for decision, and if there is waiver the notice will be of no avail."

A week later, on November 10, 1988, exactly sixty days prior to the scheduled trial date, the court and counsel met to further discuss the possibility of a settlement conference. Judge Howe's minute

entry for that date indicates the following discussion:

Court and Counsel meet, intending informally to discuss settlement formats. The following are considered:

1. A preliminary position statement by each party to be submitted to the others.

2. Conference attended by all parties personally ... to discuss settlement possibilities with this judge.

3. Same as # 2, except to a person other than the judge of this division.

4. A conference in which each party sets forth confidentially, to this judge or to another person, its position of maximum extension toward settlement. This format might include:

. . . .

d. understanding that if the conference includes this judge, he may disqualify from hearing trial, with the possible concomitant resulting loss of the Jan. 9, 1989, trial date; alternatively, the parties might agree in advance whether this judge should disqualify [himself].

On November 17, 1988, the parties stipulated that Judge Howe would be the settlement judge, and that in the event settlement failed Judge Nastro would be assigned as the trial judge. Judge Howe apparently rejected this stipulation.

The court and counsel met next on November 23, 1988; the parties agree that, at that time, forty-seven days before trial, Judge Howe again said that he would honor a change of judge if one were filed.

On December 1, 1988, forty days prior to trial, plaintiffs' counsel filed a notice of change of judge. That same day, the parties filed the following stipulation:

The parties to this action, pursuant to Rule 42(f) of the Arizona Rules of Civil Procedure, hereby stipulate that upon the plaintiffs' exercise of their right to a change of judge, the action shall be re-assigned and transferred to the Honorable Daniel E. Nastro, who has advised all counsel that he is willing to have this action assigned to him, pursuant to Rule

42(f)(1)(F) of the Arizona Rules of Civil Procedure.

Judge Howe, on December 1, 1988, acknowledged by minute entry that a notice of change of judge had been filed by plaintiffs, and ordered the case transferred to the civil presiding judge for reassignment to another division.

The following day, the Honorable Frederick J. Martone, who was then civil presiding judge of the Maricopa County Superior Court, entered his order dishonoring plaintiffs' notice of change of judge as untimely, and transferred the case back to Judge Howe for trial.

Petitioners filed this special action, seeking relief from Judge Martone's refusal to honor both their notice of change of judge and their stipulation to reassign the case to Judge Nastro.

### Appearance by Respondent Judge

Real parties in interest Samaritan Health Service and Anca Maras, M.D., have joined in petitioners' contentions that Judge Martone exceeded his authority as civil presiding judge by refusing to honor plaintiffs' notice of change of judge and the parties' stipulation to an assigned judge. The adverse parties in the underlying action therefore are in agreement that special action jurisdiction is appropriate and that relief should be granted. The only opposition to the petition is a letter from Judge Martone, mailed to this court on January 6, 1989, seven days beyond the allowable response time. Petitioners have requested in their reply that Judge Martone's response be stricken.

The Arizona Supreme Court has held that a respondent judge has the right to appear and defend in a special action in which he is named. *Fenton v. Howard,* 118 Ariz. 119, 575 P.2d 318 (1978). This precedent has been criticized as creating the potential of allowing "the impartial dispenser of justice" to take an adversarial role in the action, when he should have no interest in the outcome of the litigation. *State ex rel. Dean v. City Court,* 123 Ariz. 189, 191, 598 P.2d 1008, 1010 (App.1979).

We do not believe that the appearance of Judge Martone in this case is subject to such criticism. We are informed that Judge Martone's order determining anew the issue of timeliness and refusing to honor the trial judge's acceptance of change of judge is in conformity with existing policies of the Maricopa County Superior Court. Hence, if we decide that the challenged order was made without authority, the daily administrative policies of the civil presiding judge in reviewing notices of change of judge and in assigning cases could be affected. Under these circumstances, the respondent judge has a legitimate administrative interest in appearing and defending those administrative policies. He is properly before this court as an advocate. *Cf. Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977) (authority of Industrial Commission, as neutral arbiter of the claim, to appear and defend its decision before the court of appeals, is proper when appearance involves the interest of the Commission in carrying out its procedures). We note that civil presiding judges previously have filed responses in special actions seeking clarification from this court on similar procedural matters. *See, e.g., Guberman v. Chatwin*, 19 Ariz.App. 590, 509 P.2d 721 (1973) (civil presiding judge responded to advise the court about his uniform practice in handling notices of change of judge). We therefore have considered Judge Martone's letter in reaching a decision in this matter. Moreover, although Judge Martone's letter was untimely filed as a response, this court may, in the furtherance of justice, suspend that time requirement and proceed as if the response was timely filed. *See* Rule 3, Arizona Rules of Civil Appellate Procedure. We have afforded petitioners the opportunity to respond to Judge Martone's letter to this court, to avoid any prejudice.

### *Notice of Change of Judge*

Rule 42(f), Arizona Rules of Civil Procedure, provides in relevant part:

1. *Change as a matter of right.*

**A. Nature of proceedings.** In any action pending in superior court, each side is entitled as a matter of right to a change of one judge.... A party wishing to exercise his right to change of judge shall file a "Notice of Change of Judge." ...

....

**C. Time.** Failure to file a timely notice precludes change of judge as a matter of right. A notice is timely filed if filed sixty (60) or more days before the date set for trial....

In this case, Judge Howe honored petitioners' notice of change of judge by issuing the following order on December 1, 1988:

A Notice of Change of Judge having been filed by Plaintiff,

IT IS ORDERED transferring the above-entitled cause to the Civil Presiding Judge for reassignment to another Division.

For whatever reasons, which may have included the fact that he had previously assured the parties less than sixty days prior to trial that he would honor such a notice, Judge Howe did not dishonor the notice as untimely, nor was the notice challenged by any of the opposing parties as untimely. Rather, the civil presiding judge apparently decided to raise the timeliness issue on his own motion, as reflected in Judge Martone's order of December 2, 1988:

The court has before it Judge Howe's minute order of December 1, 1988 transferring this action to us for reassignment. However, a review of the file indicates that plaintiff's notice of change of judge was submitted on December 1, 1988. The trial in this action is set for January 9, 1989. Under Rule 42(f)(1)(C), Ariz.R.Civ.P., a notice is timely if filed sixty or more days before the date set for trial and failure to file a timely notice precludes change of judge as a matter of right. Since plaintiff's notice of change of judge as to Judge Howe is untimely, it is dishonored, and this action is transferred back to the Honorable Joseph D. Howe.

■ Petitioners argue that the civil presiding judge exceeded his authority by dishonoring the notice, thereby in effect over-

ruling Judge Howe's order honoring the notice. They contend that Judge Martone's administrative role as presiding civil judge limits his discretion to honoring Judge Howe's transfer and reassigning the case. We agree.

Under Rule 42(f), as well as under the prior statutory method of securing a change of judge by filing an affidavit pursuant to former A.R.S. § 12–409, the ruling on the timeliness of the notice of change of judge is to be made by the trial judge to be disqualified rather than by the civil presiding judge. *Guberman v. Chatwin,* 19 Ariz.App. at 593, 509 P.2d at 724 (Rule 42(f)); *Hendrickson v. Superior Court,* 85 Ariz. 10, 330 P.2d 507 (1958) (A.R.S. § 12–409). In *Guberman,* the respondent presiding judge advised the court "that it is his uniform practice to permit the judge in relation to whom a notice of change of judge has been presented to rule upon the timeliness of his motion ... [pursuant to] Rule 42(f)." The *Guberman* court approved of this practice, reasoning that the trial judge is best qualified to decide timeliness and waiver issues under Rule 42(f). 19 Ariz.App. at 593, 509 P.2d at 724.

■ In our opinion, a civil presiding judge does not obtain additional judicial authority to overrule a trial judge's decision by nature of his administrative powers. *See Fraternal Order of Police, Lodge 2 v. Superior Court,* 122 Ariz. 563, 565, 596 P.2d 701, 703 (1979) (superior court judge has no jurisdiction to review or change previous ruling of another superior court judge). The presiding judge is "responsible for the day-to-day administrative operation of the court." Rule 1.3, Local Rules, Maricopa County Superior Court. This responsibility includes the authority to make permanent assignment of a case to one judge. Rule VII, Uniform Rules of Practice for the Superior Court. However, the assignment authority of the presiding judge does not include the power to exercise a "horizontal appeal" and overrule a fellow judge on decisions of substance such as the timeliness of a change of judge. *See* Rule 42(f), Arizona Rules of Civil Procedure; Rule 2.7, Local Rules, Maricopa

County Superior Court. We have previously tried to avoid such "horizontal appeals" so that the same motion cannot be brought in front of different superior court judges. *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966).

At this point it is appropriate to comment on the position taken by the dissent both as to the facts and the law. First, the dissent appears to glean from the record that the motive of the parties in seeking a change of judge in this matter was simply a subterfuge to obtain a continuance of a trial date for which they were not prepared. While admittedly, abuses of Rule 42(f) occur for this purpose, there is no evidence of any such motive in this case and its existence is based solely on supposition. Nor is there any indication that the facts presented by the parties are incorrect. The letter of Judge Martone does not suggest otherwise.

Second, the dissent treats the question of whether the notice of the change of judge was timely as simply a matter of counting days, a ministerial calendaring function. As previously pointed out, Judge Howe could have properly determined that his previous order had lulled counsel into believing that a notice of change of judge would be honored even though technically untimely. This is exactly how Judge Howe properly resolved this factual issue, by accepting the change of judge. *See Hendrickson v. Superior Court, supra,* (notice may be timely even though filed after the expiration of time to file has expired, if facts giving rise to the notice were acquired after expiration of normal time period.) The dissent's assertion that Judge Howe lacks judicial authority to make this determination is without support. Thus, one person's "ministerial calendaring function" becomes another person's "horizontal appeal."

This brings us to the main point of divergence between the majority and dissent. The dissent takes the position that, even in the absence of additional facts, one superior court judge may overrule another superior court judge on the same issue in the same case. In doing so it relies upon lan-

guage in *Hendrickson* that timeliness of a notice of change of judge "must be determined by the *Judge presiding*," and two Division Two court of appeals decisions rendered in 1966 and 1969 respectively.

As to the *Hendrickson* language, it is clear that "judge presiding" does not refer to the presiding judge of a multi-judge county but to the judge presiding over the matter in the first instance. This is so, for the order being reviewed in *Hendrickson* was from Cochise County which in 1958 had only one judge.

Whatever may have been the force of the court of appeals decisions, the latest pronouncement on this subject is from the Arizona Supreme Court in *Fraternal Order of Police v. Superior Court*, 122 Ariz. 563, 596 P.2d 701 (1979) which stated:

> The petitioner contends that the respondent judge had no jurisdiction to issue an injunction forbidding the holding of an election for determination of an employee bargaining representative. Any action taken by the respondent judge would be in conflict with the previous rulings of Judge LaPrade. We agree.
>
> The respondent judge, in effect, was acting as a reviewing court of a judge on the same court. *He had no jurisdiction to review or change the judgment of a judge with identical jurisdiction.*

*Id.* at 565, 596 P.2d 701 (emphasis added).

We therefore hold that Judge Martone abused his discretion and acted in excess of his authority in dishonoring the notice of change of judge as untimely filed. In his administrative capacity as presiding judge, he was required to reassign the case upon transfer from the trial judge. We therefore vacate his order reassigning the case to Judge Howe.

### Stipulation to Assigned Judge

Petitioners next argue that Judge Martone also exceeded his authority in refusing to assign the case to Judge Nastro as the stipulated trial judge as required by Rule 42(f)(1)(F). While we agree that Judge Martone had no discretion in the matter, this issue must be remanded for an eviden-

tiary hearing to determine whether Judge Nastro has indicated his willingness and availability as the assigned judge.

Rule 42(f)(1)(F) provides:

> Assignment of action. At the time of the filing of a notice of change of judge, the parties shall inform the court in writing if they have agreed upon a judge who is available and is willing to have the action assigned to him. An agreement of all parties upon such judge shall be honored and shall preclude further changes of judge as a matter of right unless the judge agreed upon becomes unavailable....

Our supreme court has held that the "clear and unambiguous" language of this rule is mandatory, and that once such a stipulation has been filed, a presiding judge "has no discretion but to honor it." *City of Tucson v. Birdsall*, 109 Ariz. 581, 582, 514 P.2d 714, 715 (1973).

Because the presiding judge had no authority to dishonor the notice of change of judge, his administrative authority upon receiving the stipulation was limited to reassigning the case to Judge Nastro in accordance with the stipulation. His reassignment of the case to Judge Howe was an abuse of discretion for failure to honor the stipulation.

In *City of Tucson v. Birdsall*, the supreme court remedied a similar problem by ordering the presiding judge to reassign the matter to the stipulated trial judge pursuant to Rule 42(f)(1)(F). In that case, the court had before it in the record a signed and filed consent by the stipulated judge, indicating his availability and willingness to be assigned the case. However, in this case we find a factual conflict existing in the limited record on review as to Judge Nastro's availability and willingness to be assigned this case.

We have before us several affidavits of counsel, attesting that Judge Nastro initially agreed to accept the matter for trial prior to the stipulation of all counsel, and has reconfirmed his willingness to act as trial judge even after the filing of this special action. On the other hand, Judge

Martone has indicated to this court that after he consulted with Judges Howe and Nastro about the factual assertions the parties raised regarding this matter, he concluded that this action is based "upon either erroneous factual assertions or mis-understandings." Judge Martone's conclusion is that Judge Howe agreed to be the trial judge and Judge Nastro agreed to be the settlement judge, not the other way around. Additionally, Judge Martone informs us that, since this action was filed, Judge Howe has indicated that he would disqualify himself as trial judge, "based on the assertions made in the petition for special action." Finally, Judge Martone advises us of the following policy in Maricopa County Superior Court:

> If Judge Howe disqualifies himself, Judge Schneider [the current presiding judge] would then reassign the action to some other judge in the Civil Department on a random basis. The members of the Civil Department have been encouraged not to indicate their ability and willingness to accept a case on a notice within the meaning of Rule 42(f)(1)(F), Ariz.R. Civ.P., in order to discourage forum shopping.

The "encouragement" referred to by Judge Martone is obviously intended to circumvent the workings of a mandatory procedural rule. However, even in the absence of such a policy we recognize that a factual conflict exists on the record presented to us. We cannot determine, on this record, if Judge Nastro actually indicated that he "is available and is willing to have the action assigned to him," in accordance with Rule 42(f)(1)(F). We therefore must remand this matter for an evidentiary hearing to determine this issue.

If Judge Nastro indicates that the assertions of his availability and willingness contained in the stipulation are true, then the presiding judge has no discretion but to assign the case to Judge Nastro. If Judge Nastro indicates that he is not either available or willing to have the action assigned to him, the presiding judge must assign the case according to the provisions of Rule 42(f)(1)(F) regarding unavailability of the stipulated judge:

> If a judge to whom an action has been assigned by agreement later becomes unavailable because of a change of calendar assignment, death, illness or other legal incapacity, the parties shall be restored to their several positions and rights under this rule as they existed immediately before the assignment of the action to such judge.

As a final matter, we note that our disposition here may affect the internal policies and administrative practices now utilized in the Maricopa County Superior Court. We recognize, as did the supreme court in *City of Tucson v. Birdsall* and the dissent here, the practical problems in docketing and budgeting that may be inherent in allowing parties to stipulate to a desired trial judge, especially in complex litigation. However, we are, as was the supreme court, "constrained to hold that the Rule is clear and unambiguous." *Birdsall*, 109 Ariz. at 582, 514 P.2d at 714. If the rule is unworkable and plays havoc with the superior court's administrative system, the remedy is to seek a rule change, not to develop administrative practices and policies which circumvent the rule.

Based on the foregoing, we grant special action relief and vacate the presiding judge's order reassigning the case to Judge Howe. We remand this matter to superior court for further proceedings consistent with this opinion. The stay previously entered in this matter is dissolved.

BROOKS, J., concurs.

GERBER, Judge, dissenting.

I dissent for reasons that follow.

This case presents unusual circumstances in a number of respects. In the first place, all adversaries in this special action appear before this court in total agreement, even to the point of echoing each other's off-the-record recollections of unrecorded communications with various judges. This court is thus deprived of any opposing authority or argument. Although the stated dispute is about Rule 42(f), it appears from a close reading of the minute entries that none of the parties could have

been ready for the firm trial date set by Judge Howe for January 9, 1989. As of early November, 1988, with Thanksgiving and Christmas holidays on the near horizon, four sets of counsel still needed to schedule and take expert depositions of Chez, Ward, Drs. Loftus, Frey, and Depp, plus an unknown number of nurses, as well as interview a third group of non-expert witnesses. The deponents were geographically spread from New Jersey to Nevada to Washington, thus requiring extensive travel. Counsel were scheduling depositions as late as December 17, 1988. Plaintiff's counsel had failed to complete a promised "Day in the Life" film about the plaintiff. As of mid-November, 1988, counsel were not hurrying to complete discovery but were sparring with protective motions to prevent depositions from going forward in the short working time left before holidays and trial. Thus, although noticing Judge Howe was the stated purpose for the change of judge notice, its unstated purpose appears to have been to avoid trial before any judge on the firm trial date of January 9, for which discovery obviously could not have been completed.

These same adversaries argue in concert that Judge Howe had informally accepted an oral notice of change of judge as early as the second week in November, 1988. The record does not harmonize with this chorus. Judge Howe would not have honored the December 1 change of judge notice if he had accepted an earlier one. There is no showing of any compliance with Rule 42(f)(1)(A) requiring indication on the record of the date of the informal request and the name of the party requesting it. Furthermore, if an earlier informal request and had been made and honored, the case would have been transferred then, leaving no need for anyone to file the formal notice of change of judge on December 1.

These adversaries all admit that the December 1 change of judge notice was untimely because filed less than 60 days prior to trial as required by Rule 42. November 10, 1988 was in fact the last day for a timely notice; the December 1 notice was 20 days late. The tardy nature of the notice is said to be remedied by the argument, in which these adversaries again concur, that Mr. Reilly "intended" to file such a motion, "had it on his desk" or "would have filed it" had he not been lulled by Judge Howe into thinking that time was unimportant. Apart from paving the road to the underworld, intentions such as this count in the law only to the extent that they are put into effect. As to the reliance argument, Judge Howe had warned counsel that while he would disqualify himself to avoid being both the trial and settlement judge, he would honor a change of judge notice only absent waiver or objection (minute entry of November 3–4, 1988). Counsel received this warning six days before November 10, 1988, the last day for a timely notice. Judge Howe's comments indicate nothing but an effort to comply with the standards of Rule 42(f). Nowhere does he promise to honor an untimely notice.

Even if one assumes that Judge Howe created the impression he would honor an untimely notice, the fact remains that he lacked authority to honor an untimely notice. Honoring a "technically untimely" notice does not transform that notice into a timely one. *Hendrickson* only permits a late notice to be considered timely when it is based on facts *discovered after the expiration of the time period.* 85 Ariz. at 12, 330 P.2d at 508–09. In the present case, counsel did not acquire any facts giving rise to the notice after the expiration of the notice period; to the contrary, the discussion on November 3 and November 10, 1988 about honoring a notice occurred *before* expiration of the time period. Counsel simply let the time expire, and with it, Judge Howe's authority to grant the notice. In *Fendler v. Phoenix Newspapers, Inc.*, 130 Ariz. 475, 636 P.2d 1257 (App. 1981), this court rejected an assertion that a trial court has authority to honor an informal, untimely notice:

> ... we address appellant's argument that the trial judge should have recused herself "when asked to do so." The record reflects no notice for change of judge either as a matter of right pursuant to Rule 42(f)(1) or for cause pursuant to Rule 42(f)(2), Arizona Rules of Civil

Procedure. *The right to apply for a change of judge for cause is waived if not timely filed.*

*Id.* at 481, 636 P.2d at 1263 (emphasis added).

Central to the concurring arguments of counsel is the assertion that Judge Martone should not have "overruled" Judge Howe's honoring of the December 1 notice. Again, this court is not presented with any contrary authority. I dissent here because I do not see Judge Martone's minute entry order transferring the case back to Judge Howe as an "overruling" of Judge Howe but simply as a reassignment back to Judge Howe after a clearly untimely and thus ineffective notice. In Rules 2.7 and 3.1(b) of the Local Rules of Maricopa County, I find authority for a presiding judge to make such ministerial case assignments and reassignments as necessary for efficient case processing. True, *Guberman* does authorize the noticed judge to determine the validity of the notice; *Guberman,* however, also says, in a portion not quoted by concurring counsel:

> We find that Rule 42(f) *is not clear in this regard.* Rule 42(f)(3) makes it clear that the effort to disqualify a judge to whom a case has been assigned must be by a timely application and *if the application is not timely, or if there has been a waiver, then that judge has not been disqualified.*

19 Ariz.App. at 593, 509 P.2d at 724 (emphasis added). Thus, while *Guberman* approved referring the matter back to the noticed judge to determine the validity of the notice, there is nothing "clear" in that opinion or in Rule 42(f) which precludes the civil presiding judge from also ruling on timeliness, which is merely a counting exercise having nothing to do with the legal merits of the controversy.

Presiding judges appear to have such supervisory authority. Rule 42(f)(1)(A) grants the presiding judge explicit authority in some cases to monitor a change of judge. That rule states that:

> Whenever two or more parties on a side have adverse or hostile interests, the *presiding judge* may allow additional changes of judges as a matter of right....

(emphasis added).

The arguments of these concurring adversaries overlook language in analogous situations which supports the civil presiding judge's authority to "preside." For example, in *Hendrickson,* the court makes the following observation about determination of timeliness of an affidavit of bias and prejudice:

> ... *the legal sufficiency and timeliness of an affidavit must be determined by the judge presiding or one to whom the matter may be assigned for that purpose.*

85 Ariz. at 13, 330 P.2d at 509 (emphasis added). The civil presiding judge is at least implicitly one to whom the matter of counting days is assigned.

A presiding judge has analogous authority in ruling upon notices of change of judge on the basis of bias and prejudice and on transferring "last day" criminal matters. Similarly, the court administrator's office regularly issues calendaring orders and inactive calendar dismissals which are frequently altered by one or more superior court judges. A presiding judge's review of notices of change of judge is a ministerial calendaring function oriented toward efficient case management and docket control. To deny such authority in the face of a patently untimely notice leads to the result, among others, that a noticed judge has unfettered authority to indulge invalid notices to reduce caseload—hardly a procedure insuring judicial accountability. Admittedly, there is no evidence of any such improper motive in this case, but it has surfaced elsewhere.

Rather than an "appellate" decision overruling Judge Howe on a matter of "substance," Judge Martone's minute entry of December 2, 1988 appears simply as a reassignment back to Judge Howe after a patently untimely and thus invalid notice. No case explicitly undermines this procedure. In *Fraternal Order,* cited by the majority, the Supreme Court vacated a court order purporting to enjoin an employee relations board from conducting a representation

election mandated by a prior order of another judge. 122 Ariz. 563, 596 P.2d 701 (1979). In my view the ministerial calendaring function involved in this case is simply not akin to the conflicting substantive orders at issue in *Fraternal Police*. In addition, *State v. Superior Court*, 4 Ariz. App. 562, 422 P.2d 393 (1967) merely refers to cases "properly" before a judge; here, the case was indeed "properly" before Judge Howe because the notice was late and thus never took effect as a matter of law under Rule 42(f)(3).

Other cases acknowledge the authority of a superior court judge even to "overrule" decisions by judicial colleagues. I do not advocate such "overruling." My point is that if Arizona jurisprudence allows occasional "overruling" on substantive points, then *a fortiori* it allows correction of counting errors. For example, *Williams v. Garrett*, 4 Ariz.App. 7, 9, 417 P.2d 378, 380 (1966) states:

> Decisions generally acknowledge and we are in agreement that "... a trial judge has 'power' to vacate, modify, contravene, or depart from the ruling or order of another in the same case, whatever may be the consequences of his so doing."

There the court adds pointedly that the function of a court of appeals is to "not interfere ... unless there has been an abuse of discretion," which I submit can hardly lie in dishonoring a notice invalid on its face. *Id.* In addition, *State ex rel. Herman v. Hague*, 10 Ariz.App. 404, 459 P.2d 321 (1969) upheld a trial judge overruling another trial judge's invalid order on trial severance, indicating that such overruling was appropriate when the prior ruling was manifestly invalid. Such approximates the situation here, for the December 1 notice was manifestly untimely. If such substantive "overruling" is permitted, a mere counting error ought to be even more subject to administrative correction.

I concur with the majority regarding the re-assignment of the case if the notice must be honored. The internal practice in Maricopa County Superior Court has been to discourage judges from agreeing to take cases on the basis of stipulation of counsel because it encourages forum shopping and shifts caseloads beyond the control of the presiding judge and the court administrator. *Birdsall* and the explicit language of Rule 42(f)(1)(F) make it clear, however, that if a valid notice of change of judge is filed and if counsel agree upon a willing judge, the presiding judge is bound, however reluctantly, to transfer the matter to the agreed-upon judge. 109 Ariz. at 582, 514 P.2d at 715. That part of the law, in my opinion at least, is clear. Obviously, in my view, there is no need to do so here because I find Judge Martone's minute entry of December 2, 1988 referring the case back to Judge Howe to be proper. The bottom line is that I would decline jurisdiction to hear this special action because, as *Garrett* teaches, the function of a court of appeals is "not to interfere ... unless there has been an abuse of discretion." 4 Ariz.App. at 9, 417 P.2d at 380.

Rule 42(f) deserves revisiting, redrafting or possibly interment. The practicing bar and trial judges are well aware of the fact that it is commonly used as a disguised motion to continue, particularly to delay a day of reckoning in court and often to allow time for uncompleted discovery. From an administrative point of view, these uses of Rule 42(f) frustrate a presiding judge's efforts to maintain firm trial dates and to control judicial assignments.[1] Rule 42(f) practice lends itself richly to legal gamesmanship. If Rule 42(f) must exist, a more workable version is the philosophy of Rule 10.2, Arizona Rules of Criminal Procedure, which opens the change of judge window for a period of 10 days following the initial assignment to a judge. Better still, the rule could be abolished; the prop-

---

1. Applicable rules in other state court systems require that motions affecting docket control be submitted directly to a presiding or coordinating judge. For example, California's Code of Civil Procedure, § 170.6, provides that a motion alleging prejudice on the part of an assigned judge "shall be made to the judge supervising the master calendar," where a master calendar exists.

er time to change judges is at the ballot box, not on the eve of trial.