864 P.2d 1042

**RILEY, HOGGATT & SUAGEE, P.C., Plaintiff/Appellant,**

v.

**Ann ENGLISH, Gene Manring, and Kim Bennett, Chairman and Members of the Cochise County Board of Supervisors and Cochise County, a body public, Defendants/Appellees.**

**No. CV–92–0355–PR.**

Supreme Court of Arizona, En Banc.

Dec. 9, 1993.

Kerley & Sierra by James K. Kerley, Sierra Vista, and Alexander L. Sierra, Tucson, for plaintiff/appellant.

Alan K. Polley, Cochise County Atty. by Paula N. Wilk, Bisbee, for defendants/appellees.

**12**

## AMENDED OPINION

Memorandum Decision of the Court
of Appeals, Division Two, filed
July 9, 1992, Vacated

FELDMAN, Chief Justice.

The superior court dismissed a claim for legal fees and costs submitted by Riley, Hoggatt & Suagee, P.C. ("Plaintiff"), finding that the claim failed as a matter of law. We granted review because the issue has statewide importance. Ariz.R.Civ.App.P. 23(c)(4). We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), A.R.S. § 12–120.24, and Ariz. R.Civ.App.P. 23.

### FACTS AND PROCEDURAL HISTORY

In sentencing a criminal defendant who lived in Willcox, a Cochise County justice of the peace (the "Judge") ordered that the defendant serve his thirty-day sentence in the Willcox "branch" of the Cochise County jail. The purpose was to allow the defendant to participate in a punishment program that would permit him to continue his employment and serve his sentence at night and on weekends. A.R.S. § 28–693(D) authorizes such sentences. The Cochise County Sheriff (the "Sheriff") refused to incarcerate the defendant in the Willcox jail, relying on the pre–1989 versions of A.R.S. § 11–441(A)(5) and § 31–101. The relevant provisions authorize a sheriff, among other things, to "keep the county jail . . . and the prisoners therein."

The Sheriff had adopted his own policy, which provided that the county jails would accept prisoners sentenced under the "hardship" provisions of A.R.S. § 28–693 only if those prisoners were incarcerated in Bisbee. *Judd v. Bollman*, 166 Ariz. 417, 418–19, 803 P.2d 138, 139–40 (Ct.App.1990) (rev. denied Jan. 15, 1991). Given the distance between Willcox and Bisbee, the Sheriff's policy effectively negated the ability of justices of the peace to sentence misdemeanor prisoners under A.R.S. § 28–693(D). In the present case, the Judge did not order the Sheriff to take

any action other than hold the defendant in the existing county jail facility in Willcox.

The Sheriff claimed the Judge's order exceeded his jurisdiction. Represented by the Cochise County Attorney, the Sheriff filed a special action [1] in superior court, naming the Judge as respondent. *See* Ariz.R.P.Spec.Act. 2(a)(1). That action challenged the jurisdiction and authority of justices of the peace to make orders directing the place of incarceration. The Judge retained Plaintiff's predecessor, Riley & Hoggatt, P.C., to represent him. Following a hearing, the superior court vacated the Judge's order, finding that he had exceeded his authority and jurisdiction. The Judge appealed, the court of appeals affirmed, and we denied review. *Judd,* 166 Ariz. at 417–18, 803 P.2d at 138–39.

Plaintiff then requested payment from Cochise County for the legal fees and costs incurred in representing the Judge. When the county denied the request, Plaintiff filed an action against Cochise County and its Board of Supervisors ("Defendants"). The superior court granted summary judgment in favor of Defendants, and the court of appeals affirmed. *Riley, Hoggatt & Suagee, P.C. v. English,* No. 2 CA–CV 92–0015 (July 9, 1992) (mem. dec.). Plaintiff sought, and we granted, review of the following issue:

> Did the trial court err in granting [the county's] motion to dismiss, treated as a motion for summary judgment, when the facts, viewed in a light most favorable to [Plaintiff] establish [Plaintiff's] right to recover?

### DISCUSSION

■ Summary judgment is proper when, factually, "reasonable people could not agree with the conclusion advanced by the proponent of the claim," *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990), and, legally, the movant is entitled to judgment as a matter of law, Ariz.R.Civ.P. 56(c). Our review is de novo, viewing the evidence in a light most favorable to the non-movant.

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus, or certiorari is now obtained by "special action." Ariz.R.P.Spec.Act. 1(a).

*Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990).

■ Because the county attorney filed a special action on behalf of the Sheriff, the county attorney could not also represent the Judge. *See* Ariz.R.Sup.Ct. 42, ER 1.7. As we have stated, however, "the county attorney is responsible for providing legal advice and representation to justices of the peace so requesting." *Collins v. Corbin,* 160 Ariz. 165, 167, 771 P.2d 1380, 1382 (1989). The county attorney also is responsible for representing the county sheriff. *See generally* A.R.S. § 11–532. Thus, what is the appropriate course when these two responsibilities collide?

■ Justices of the peace are county officers and integral parts of our judicial system. *Collins,* 160 Ariz. at 165, 771 P.2d at 1380. Because justices of the peace serve a vital function in the judiciary, Arizona "recognize[s] [their] inherent power ... to require the providing of personnel in order to perform [their] necessary functions." *Reinhold v. Board of Supervisors,* 139 Ariz. 227, 232, 677 P.2d 1335, 1340 (Ct.App.1984). This power can include hiring counsel to assert the position of the justice of the peace (a county officer) in litigation against other branches of government. *See Deddens v. Cochise County,* 113 Ariz. 75, 77–78, 546 P.2d 811, 814–15 (1976); *Maricopa County v. Biaett,* 21 Ariz.App. 286, 290, 518 P.2d 1003, 1007 (1974).

■ The power to obtain necessary services, however, is limited and "should be exercised only when there is no established method for obtaining needed personnel *or* when a reasonable, good faith, diligent effort to utilize such methods has been attempted and has failed." *Reinhold,* 139 Ariz. at 232, 677 P.2d at 1340 (emphasis added). When a justice of the peace has exercised this inherent power, a county has the duty to approve a request for legal fees and costs, absent a clear showing that the justice of the peace acted arbitrarily, capriciously, or unreasonably in procuring such services. *See Maricopa County v. Dann,* 157 Ariz. 396, 398, 758

P.2d 1298, 1300 (1988); *Reinhold,* 139 Ariz. at 232, 677 P.2d at 1340.

Thus, there are two factors that determine whether the Judge properly obtained independent counsel to represent him in the special action. First, we must establish the need to litigate. Second, we must decide whether, as a matter of law, there is an established method for obtaining legal services and, if so, whether the Judge made a reasonable, good faith, diligent, but unsuccessful, effort to utilize that method.

**A. Did the Judge have a legitimate need or purpose in defending his order?**

The dissent focuses on standing—arguing that the Judge had no need to retain counsel to litigate because he had no standing to do so. However, this narrow issue is now precluded. In all six court appearances, the county *never* raised lack of standing as a defense in either the underlying case or in this action for legal fees. Moreover, in the present context, standing does not refer to either *in personam* or subject matter jurisdiction. Rather, it refers to the ethical propriety of the Judge appearing as a litigant. *See Hurles v. Superior Court,* 174 Ariz. 331, 849 P.2d 1 (1993).

The county could have properly raised this issue in *Judd;* arguably, the appellate court in *Judd* could have raised it *sua sponte. See id.* at 332, 849 P.2d at 2 (although not raised by the parties, the appellate court dismissed the case, holding that the trial court lacked standing to litigate). Neither the county nor the appellate court raised the issue. The case was not dismissed for lack of standing; it was decided on its merits, and the decision is final. It is simply too late now to use the present case, a dispute over the county's liability for fees, to make a collateral attack on the Judge's standing in the previous case.

■ The standing issue, of course, is inextricably intertwined with the broader question of the Judge's need to litigate. In a special action contesting the validity of a judicial order, the trial court must be named

as a respondent. *See Id.* at 332, 849 P.2d at 2 (1993). This is normally only a formality, with the actual litigant named as "real party in interest." Ariz.R.P.Spec.Act. 2(a)(1). In most cases, the trial court's interest is nominal, therefore, and provides the judge no valid reason to respond to the special action. *Id.* at 332, 849 P.2d at 2. However, in certain circumstances a trial judge should respond. For instance, a judge should "explain or defend an administrative practice, policy, or local rule." *Id.* at 333, 849 P.2d at 3.

██ In this case the facts show that the Judge was not merely defending a case-specific ruling. By the time the issues between the Judge and the Sheriff were tried, the defendant had completed his sentence at Bisbee and was not even named as a party to the special action. Thus, for him the issues were moot. Therefore, in attempting to uphold the validity of the order imposing a form of community punishment on a defendant convicted of misdemeanor reckless driving and sentenced to thirty days in jail, the Judge obviously litigated issues important to the administration of his court. *Judd* centered on a conflict between a sheriff's right to decide where to confine prisoners and a trial court's pragmatic ability to apply A.R.S. § 28–693(D) in a rural county. Thus, under *Hurles,* and particularly in light of the mootness of the sentence, the Judge's actions were "defense-of-policy" rather than an attempt to defend a single ruling. *Id.*; *see also Dunn v. Superior Court,* 160 Ariz. 311, 772 P.2d 1164 (Ct.App.1989) (superior court judge responded by letter to a special action challenging his refusal to grant a motion for a change of judge; the ruling defended a court's common administrative practice).

██ In the present case, the Judge attempted to defend and clarify his statutory right to assign prisoners to a work release program under A.R.S. 28–693(D). A favorable appellate ruling would establish the Judge's ability to apply A.R.S. § 28–693(D), while the Sheriff's policy, if unchallenged, would destroy that ability. That must have been the Judge's sole concern, as the defendant had served his sentence, was not a party, and the issue no longer had case-specific importance. The fact that the Judge lost on appeal has no bearing on his right to defend his position. The court of appeals declined to hold the appeal frivolous. *Judd,* 166 Ariz. at 420, 803 P.2d at 141. We also conclude that the Judge was *not* simply trying to justify himself but, rather, was defending the court's future power to use the community punishment statute. Assuming, arguendo, that *Hurles* articulates a correct test, the Judge needed legal representation.

Before leaving *Hurles,* and in light of Justice Corcoran's dissent, further comment is needed. We would never invite "warfare" between judges and public officials. Nor do we encourage "battling judges" to "enter the trenches as litigants." *Post* at 19, 864 P.2d at 1051. As noted, the Sheriff's suit against the Judge questioned whether statutory discretion could survive when the Sheriff, without explanation, refused to accept the defendant in the local jail. Although the Judge lost, it is difficult to ascertain why his efforts to defend his jurisdiction to impose community punishment on hardship prisoners should incite such rhetoric. Nor was this "judge-initiated litigation." *Post* at 19, 864 P.2d at 1051. The *Sheriff* filed the special action against the Judge, alleging that the Judge either had no jurisdiction or exceeded it in directing the Sheriff to incarcerate the defendant in Willcox. *Judd,* 166 Ariz. at 418, 803 P.2d at 139.

We now turn to the Judge's method for obtaining representation.

**B. Was there, as a matter of law, an established method for obtaining legal services?**

██ Defendants claim that the Purchasing Manual for Cochise County ("Manual") is an established—indeed exclusive—method for procuring legal services and that Plaintiff did not attempt to comply with this Manual. As Defendants concede, however, the Manual contains "no specific provision for obtaining

lawyers for the justice court in special action proceedings." Indeed, the Manual contains "general policies" not intended to be completely comprehensive. "These policies are intended to cover *almost all* cases involving procurement for the County. . . . While [this Manual] is necessarily detailed, *it cannot cover all eventualities. The occasional exceptional cases will be worked out as circumstances warrant.*" Manual at 1, 2 (emphasis added). Nor does the Manual, as a matter of law, cover "emergency purchases" of services (as opposed to goods). *Id.* at 9 (referring to "emergency purchases" of an "item needed" from a "vendor"). Thus, we cannot state as a matter of law that the Manual is an established method for obtaining legal services.

**C. Did the Judge, as a matter of law, fail to make a reasonable, good faith, diligent, but unsuccessful, effort to follow any applicable procurement method?**

 The Judge was served with the special action complaint on July 12, 1989; the hearing on the matter was set for and held on July 18, 1989. Viewing the evidence in a light most favorable to Plaintiff, the day the Judge was served, he contacted the presiding superior court judge of Cochise County. The presiding judge has supervisory and administrative authority over all courts within his county. *See* Arizona Supreme Court Administrative Order 93–30. The presiding judge advised the Judge to hire an attorney and bill the county. That evening, the Judge discussed the possibility of legal representation with one of Plaintiff's attorneys. In this conversation, the Judge relayed the substance of his discussion with the presiding judge.

The next day, July 13, 1989, one of Plaintiff's attorneys contacted the presiding judge, who confirmed what the Judge had said. This attorney then telephoned the Cochise County Administrator, who was unavailable to take the call. Following this call, Plaintiff agreed to represent the Judge in the special action.

On July 14, 1989, Plaintiff wrote a letter to the county administrator, stating that the presiding judge had advised the Judge "that he should hire a private attorney and have the attorney bill the County for his services." The letter added that Plaintiff was representing the Judge and that the letter was written "to acquaint you with this situation and the fact that we will be billing the County for our services." The presiding judge apparently received a copy of this letter.

In short, the Judge and Plaintiff both contacted the presiding judge (the functional equivalent of the department head in this case) regarding the situation and received similar responses. Plaintiff twice contacted the county administrator to inform him, as well as the presiding judge, of the proposed course of action and that the county would be billed for the services rendered. Neither the county administrator nor the presiding judge objected to this procedure before Plaintiff submitted its bill. Nor did the county administrator suggest any other procurement method. Thus, we cannot state, as a matter of law, that the Judge failed to make a reasonable, good faith, diligent, but unsuccessful, effort to follow any applicable procurement policies. *See Reinhold,* 139 Ariz. at 232, 677 P.2d at 1340.

**D. Did the Judge, as a matter of law, act arbitrarily, capriciously, or unreasonably in procuring legal services?**

 Unlike the court of appeals, we do not read the procedural history of *Biaett* as setting forth "required steps" for recovery. In addition, the actions taken by the Judge in the present case went beyond those taken by the recorder in *Biaett.* In that case, the county recorder did ask the county attorney to represent him in an action against the county board. *Biaett,* 21 Ariz.App. at 287, 518 P.2d at 1004. In this case, the Judge did not ask the county attorney to represent him, but such a request clearly would have been futile because the county attorney already represented the Sheriff (the petitioner in the special action). On the other hand, there is no indication that the recorder in *Biaett* con-

tacted the county administrator or presiding judge. In this case, the Judge or Plaintiff contacted both twice.

*Biaett* found, as a matter of law, that the recorder acted properly in procuring legal services. *Id.* at 290, 518 P.2d at 1007. The facts here are stronger than *Biaett*, and we cannot conclude, as a matter of law, that the Judge acted arbitrarily, capriciously, or unreasonably in procuring legal services. *See Dann*, 157 Ariz. at 398, 758 P.2d at 1300; *Reinhold*, 139 Ariz. at 232, 677 P.2d at 1340. Moreover, the Judge was defending an important jurisdictional issue. Thus, even if there was no applicable established method for obtaining legal services, the trier of fact must consider the surrounding circumstances (including the time constraints and contact with the presiding judge and county administrator) to decide whether the actions were arbitrary, capricious, or unreasonable. *Reinhold*, 139 Ariz. at 232, 677 P.2d at 1340.

Finally, Defendants appear to argue that the Judge must have prevailed to be eligible to recover fees and costs and that the amount requested is unreasonable as a matter of law. The county is responsible for legal advice and representation for justices of the peace, *Collins*, 160 Ariz. at 167, 771 P.2d at 1382, including, obviously, instances when the justice of the peace may lose. In short, there is no prevailing party requirement, and we cannot resolve in this case, as a matter of law, any issue of reasonableness of fees and costs.[2] *Cf. Biaett*, 21 Ariz.App. at 290, 518 P.2d at 1007.

## DISPOSITION

Because there are genuine issues of material fact, and Defendants have not shown that they are entitled to judgment as a matter of law, we reverse the grant of summary judgment. Accordingly, we vacate the trial

court's judgment and the court of appeals' decision. This matter is remanded to the trial court for further proceedings consistent with this opinion.

ZLAKET and MARTONE, JJ., concur.

MOELLER, Vice Chief Justice, dissenting.

I respectfully dissent. In this case a law firm seeks to recover attorney's fees from Cochise County for services rendered to a justice of the peace in that county, Judge Bollman. When the case originally was presented to this court on petition for review, I was of the view that it met none of the criteria for review by this court. *See* Rule 23(c)(4), Rules of Civil Appellate Procedure. For that reason, I voted to deny review. I would still vote to dismiss review as improvidently granted and terminate the litigation. However, because the majority has granted review and, by its opinion, reinstates the litigation, the court has itself resurrected an important issue that should have been addressed much earlier. I refer to the issue of whether Judge Bollman had standing personally to defend the special action brought against him.

This litigation arose because Judge Bollman entered an order purporting to require the Cochise County Sheriff to house a particular prisoner at a particular county facility. That order has spawned litigation at all three levels of Arizona's courts of record not once, but twice. Since January 15, 1991, when this court denied review in the case that declared the judge's order invalid, this litigation has related solely to attorney's fees. Every court that has examined the merits of the judge's order has concluded that it was invalid. Resolution of the merits of the order is easy and obvious: superior court judges, court of appeals judges, and supreme court justices do not direct the executive authorities as to where they shall confine their prisoners. Neither do justices of the peace. Although each court involved has invalidated

---

**2.** As far as what Justice Corcoran characterizes as "odysseys" through the judicial system, it is somewhat unfair to blame the Judge or his lawyers. They notified the county and did what the county officers requested. Neither an "odyssey"

nor "squads, platoons or battalions" of lawyers would have been necessary if the county had not reneged and refused to pay the $5,000 Plaintiff earned for its work.

the judge's order, no court has yet addressed the issue that should have been the first issue addressed: namely, did the judge have standing personally to appear and defend the validity of his own order?

Recently, Division One of the court of appeals comprehensively reviewed Arizona law relative to the standing of judges to appear and personally defend their rulings. *Hurles v. Superior Court,* 174 Ariz. 331, 849 P.2d 1 (App.1993). The court of appeals acknowledged that the rules of procedure often require a court or a judge to be named as a nominal respondent in a special action challenging the validity of a court ruling. The appeals court also correctly noted that "[s]uch status is a formality, however, that does not necessitate a responsive appearance by that court. The question thus arises whether—or under what circumstances—the trial court may properly respond." 174 Ariz. at 332, 849 P.2d at 2.

The *Hurles* court then proceeded to review applicable Arizona cases. In *Fenton v. Howard,* 118 Ariz. 119, 575 P.2d 318 (1978), the presiding domestic relations judge of the Pima County Superior Court was held to have standing to defend his order denying a litigant access to conciliation court counseling records that were regarded by the conciliation court as confidential because, in that particular case, the

> right of the judge to appear and to be represented is especially important because the judge named as respondent is the head of the Conciliation Court, and he is therefore vitally concerned with the outcome of the Special Action. It is the judge's prerogative to appear and argue for a result which would not hamper the effective functioning of the Conciliation Court.

118 Ariz. at 121, 575 P.2d at 320.

In *State ex rel. Dean v. City Court,* 123 Ariz. 189, 598 P.2d 1008 (App.1979), a city magistrate appeared in special action proceedings in the superior court and in the court of appeals to defend his dismissal of a traffic citation. The *Dean* court, Division Two of the Court of Appeals, was highly

critical of the judge's appearance and considered it improper. However, the court permitted the judge to participate, believing that it was bound by this court's ruling in the *Fenton* case. In *Dunn v. Superior Court,* 160 Ariz. 311, 772 P.2d 1164 (App.1989), the presiding civil judge of the Maricopa County Superior Court responded to a special action challenging an order by which he had rejected a notice of change of judge. The appeals court permitted him to do so, observing that *Dunn* was distinguishable from *Dean* because the order challenged in *Dunn* was part of a standard administrative practice. The judge was entitled to appear and explain the administrative policies of the court and the concerns that underlay the policy.

In a thoughtful review of Arizona precedent, the court of appeals in *Hurles* concluded that it is inappropriate for judges to appear and defend in what the court dubbed the "I-ruled-correctly" type of case, as distinguished from the "defense-of-policy" type of case, in which the judge is permitted to respond. Concluding that the order challenged in *Hurles* was of the "I-ruled-correctly" type, the court denied standing to the judge to appear and defend it. The court of appeals adopted the following rule and statement of principle with which I agree:

> We hold that it is proper for a judge named as a respondent in a special action to file a responsive pleading if the purpose of the response is to explain or defend an administrative practice, policy, or local rule, but that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case.

Judges, of course, generally hope their rulings are affirmed, whether on special action or direct appeal. Yet trial court judges do not appear in the many direct appeals that this court considers to advocate upholding their rulings. Nor do judges of this court seek standing to urge the supreme court to uphold our rulings on review. Rather, at every level of the judiciary, judges are presumed to recognize that they must do the best they can, ruling

by ruling, with no personal stake—and surely no *justiciable* stake—in whether they are ultimately affirmed or reversed. This principle, which is essential to impartial adjudication, does not change from direct appeal to special action, merely because the judge is a nominal respondent in the latter.

174 Ariz. at 333–34, 849 P.2d at 3–4.

In an even more recent case, *Trebesch v. Superior Court*, 175 Ariz. 284, 855 P.2d 798 (App.1993), the court of appeals, applying *Hurles*, held that an individual court commissioner had no standing to defend his order appointing the public defender to represent a defendant, but that on the facts of *Trebesch*, the superior court itself, as a court, had standing because its response was of the "defense-of-policy" type.

This brings me back to the present case. Because the majority is reviving this litigation, I believe we have an obligation to address the standing issue. We should either decide the issue or remand it for resolution by the trial court. If the challenged order of Judge Bollman has no legitimate basis in court administration or policy, and none presently appears in the record, the judge's defense falls into the "I-ruled-correctly" category. If so, he had no standing. If he had no standing, he had no authority to hire attorneys at taxpayer expense to litigate the validity of his order.

The majority states that "this narrow issue is now precluded," because the county never challenged the judge's standing. Majority op. at 13, 864 P.2d at 1045. I respectfully disagree with this proposition. As is evidenced by the authorities cited in this dissent and in *Hurles*, the question of whether a judge has standing is essentially a matter of determining proper judicial conduct on the part of the judge. *See also Rapp v. Van Dusen*, 350 F.2d 806, 812–13 (3d Cir.1965) (because "the proper administration of justice requires of a judge not only actual im-

partiality, but also the appearance of a detached impartiality[,] ... the judge below, although named as a respondent, shall be deemed a nominal party only" in mandamus actions attacking the intrinsic merits of a judicial act).[3]

The whole standing issue comes about because it is clearly recognized that in the vast majority of special actions in which the judge is named, the judge must continue to be the impartial arbiter, not the embattled litigator. *Id.* at 814 ("the procedure to be followed should avoid entangling the judge as a party litigant unless the complaint is against the judge for conduct which is extrinsic to the merits of his decision."). Only in the most exceptional and narrow circumstances is a judge permitted actively to defend his or her rulings, and then only when strong considerations of public policy require the judge's active participation. Resolution of these important questions of standing cannot be left to the parties, because it is the responsibility of the court. The parties cannot confer legitimacy upon a judge's participation by failing to object to it. The court of appeals in *Hurles* recognized this when it raised the issue of standing for the first time at oral argument. 174 Ariz. at 332, 849 P.2d at 2. I disagree with the suggestion of the majority that, while the court of appeals could have raised the issue of standing *sua sponte*, we may not. *See* Majority op. at 13, 864 P.2d at 1045. I would encourage trial and appellate courts always to inquire into a judge's standing to participate in litigation, precisely as the court of appeals did in *Hurles*.

The majority also concludes that the judge had standing because he was making a "defense-of-policy" response, rather than an "I-ruled-correctly" response within the meaning of *Hurles*. To my way of thinking, the judge who wishes to take the extraordinary step of personally appearing and defending one of

---

**3.** The *Van Dusen* court condemned the practice of not distinguishing between mandamus actions attacking the intrinsic merits of a judicial act and actions attacking judicial acts extrinsic to the merits. At least five other circuit courts of appeal follow or approve of the rule announced in *Van Dusen*. *See In re Perry*, 882 F.2d 534, 542 (1st Cir.1989); *United States v. Haldeman*, 559 F.2d 31, 139 (D.C.Cir.1976); *Walker v. CBS*, 443 F.2d 33, 34 (7th Cir.1971); *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439, 442 (2d Cir.1966); *General Tire & Rubber Co. v. Watkins*, 363 F.2d 87, 88 (4th Cir.1966).

his judicial rulings in his own name at public expense, must first affirmatively show that he falls within the narrow "defense-of-policy" exception. In my view, it would be sound policy for courts to require this showing before permitting the defense. The judge here has never made any such showing. If he is defending an arguably legitimate policy, I fail to discern what policy it is. Because the order was entirely moot by the time the judge decided to defend it, he must have intended it as a test case to establish his right to enter more such orders in the future. To me, this suggests not a defense of any legitimate policy, but an intransigent assertion of groundless jurisdiction at the expense of the taxpayers of Cochise County.

Finally, on a separate point, I note that, assuming standing, the reasonableness of incurring attorney's fees to defend, unsuccessfully, the invalid order through three levels of the Arizona court system must still be determined by the trial court. Inquiry must also be made into whether fees incurred solely in collection attempts are recoverable.

In summary, I believe this court should have denied review in this case and should now dismiss review as improvidently granted. That would terminate the litigation. Because the court is resuscitating the litigation, I believe it is obligated to consider the standing issue. In my opinion, the record before us does not support a finding that the judge had standing. At the very least, the matter should be remanded with directions to determine whether standing was affirmatively established in the original case. It is for these reasons that I respectfully dissent.

CORCORAN, Justice, dissenting:

I respectfully dissent. Not only do I share the views expressed by Justice Moeller in his dissent, but I fear the broader implications that this decision portends. The majority is opening far too wide what is already a Pandora's Box of judge-initiated litigation. Here, a justice of the peace entered an invalid order directing the Sheriff of Cochise County as to the manner and place of incarceration of a criminal defendant convicted of reckless driving.

This invalid order has engendered two consecutive odysseys through the Arizona Court system. The first resulted in a determination that the judge had "no authority to usurp the functions of the Executive Branch." *Judd v. Bollman,* 166 Ariz. 417, 419, 803 P.2d 138, 140 (App.1991). This court denied review of that decision on January 15, 1991. The second odyssey resulted because the attorneys in the first case, Riley, Hoggatt & Suagee, P.C., hired yet another law firm, Kerley & Sierra, to bring this second proceeding to recover attorneys' fees that Riley, Hoggatt & Suagee, P.C., allegedly incurred during the first odyssey. Perhaps Kerley & Sierra will hire yet another law firm to make a claim for its attorneys' fees in representing Riley, Hoggatt & Suagee, P.C.

I fear that the majority has founded a new genre in boutique litigation: battling judges, not content with resolving the legitimate issues presented in a case, may now enter the trenches as litigants, picking up the cudgel of a party who doesn't care, or has no interest in pursuing an issue. I foresee this type of litigation being used to vex both executive officers, as it vexed and is vexing the Sheriff of Cochise County in this case, and other judicial officers. Nothing in the majority's opinion limits its decision to squabbles between a judge and the executive branch. And after the majority's decision, this type of litigation can be conducted at the public's expense.

It is my opinion that when any judge is going to hire squads and platoons of lawyers to enter into trench warfare with other public officials, this court should require that the judge at least meet the criteria in *Hurles v. Superior Court,* 174 Ariz. 331, 849 P.2d 1 (App.1993), and *State ex rel. Neely v. Brown,* 177 Ariz. 6, 864 P.2d 1038 (1993). I agree with Justice Moeller that no such showing has been made in this case. This case in no way fits into the narrow category of "defense-of-policy" exception approved of in *Hurles.* The judge in this case was not

explaining or defending any administrative practice, policy, or local rule. The judge pursued this action, even after it became moot, in an attempt to usurp a power he clearly did not have. This conduct is a far cry from those cases in which judicial standing was recognized because the judiciary had a legitimate administrative interest in the proceedings.

The judge's claim for attorneys' fees should be denied by this court, as it has previously been denied in the superior court and in the court of appeals.