139 Ariz. 227 (1984)
677 P.2d 1335
The Honorable Ryan REINHOLD, Justice of the Peace, Seventh Precinct, Navajo County, Arizona, Petitioner-Appellant,
v.
The BOARD OF SUPERVISORS OF NAVAJO COUNTY, Arizona; Charles A. Patterson; Norman H. Turley and Johnny L. Butler, Supervisors and Jay DeSpain, Treasurer of Navajo County, Arizona, Respondents-Appellees.
No. 1 CA-CIV 5753.
Court of Appeals of Arizona, Division 1, Department D.
January 26, 1984.
*229 Henry J. Florence, Ltd. by Henry J. Florence, Richard M. Gerry, Sherry Bell, Phoenix, for petitioner-appellant.
Jay V. Flake, Navajo County Atty., Dale K. Patton, Jr., Holbrook, for respondents-appellees.
OPINION
JACOBSON, Chief Judge.
The sole issue raised by this appeal is whether a justice court has the authority to require the county board of supervisors to provide court personnel necessary to the efficient administration of that office.
The factual context in which this legal issue is presented is that the appellant, Ryan Reinhold, is the duly elected and acting justice of the peace, 7th Precinct, (Pine-top), of Navajo County. Prior to the fiscal year beginning July 1, 1980, the Pinetop Justice Court had two clerks, one of whom functioned as a traffic clerk and the other performed clerical services for non-traffic court business. The salary for the non-traffic clerk was funded and paid for by Navajo County. The salary for the traffic clerk was funded under the federal CETA program and thus was not a county charge.
Sometime prior to the beginning of the fiscal year 1980-1981, Judge Reinhold was informed that the federally funded CETA program was being phased out and that federal funds would not be available to pay the salary of the traffic clerk. Judge Reinhold immediately filed a request with the Navajo County Board of Supervisors for funding of the traffic clerk position for the fiscal year beginning July 1, 1980 and ending June 30, 1981. The board informed Judge Reinhold that because of constitutional spending limitations and budget limitations, no request for funding of new positions were being honored. However, the board informed Judge Reinhold that he could appear at the budget hearing to be held the following week to justify this request. Judge Reinhold's position was that it was unnecessary for him to justify the request and he did not attend the budget hearing.
The board did, however, provide funding in the sum of $3,800 for an additional part-time clerk employee. On July 3, 1980, Judge Reinhold filed a petition for Special Action Relief against the Board of Supervisors and the Treasurer of Navajo County, requesting that the superior court require the respondents to pay the necessary salaries and expenses of his judicial employees and alleged that the sum of $8,160 in addition to sums already budgeted was necessary to operate the Pinetop Justice Court until June 30, 1981.
The trial court found that Judge Reinhold's request for a second clerk was reasonable, but that the Board of Supervisors had not abused its discretion in denying the request. This finding was apparently founded on the trial court's determination that by allowing the request, the county's budget limitations would be exceeded and the board acted reasonably in considering these budget limitations. This appeal followed, in which Judge Reinhold requests that this court reverse the trial court and "enter an order affirmatively directing the County Board of Supervisors to provide the funds necessary for the employment of all necessary personnel to conduct the affairs of the justice court."
Obviously, the specific relief requested (to provide funding for the fiscal year 1980-81) has now become moot by the passage of time. However, where it appears that the case involves principles of law which affect future budgetary considerations, we may disregard the mootness of the particular case and consider the legal questions presented on their merits. Wise v. First National Bank, 49 Ariz. 146, 65 P.2d 1154 (1937); see also Corbin v. Rogers, 53 Ariz. 35, 85 P.2d 59 (1938) (if case raises questions which should be decided for guidance of public officers in the future administration of the law, it will not be dismissed as moot but will be determined on its merits.)
Since this case of first impression in Arizona presents the issue of whether a justice court has the power to hire personnel *230 necessary to the effective administration of the court over the objection of the executive-legislative branch of county government, we decline to dismiss because of mootness and decide the issue on the merits.
Judge Reinhold's basic position on appeal is that once he, as a member of the judicial system of Arizona, has shown that his request for judicial employees is not arbitrary and capricious, the duty of the board of supervisors to pass upon that request becomes merely ministerial. The board argues that decisions concerning the funding and hiring of county employees lies solely within the discretion of the board. See A.R.S. § 11-251. While conceding that the board has a ministerial duty to implement decisions concerning superior court personnel, in the absence of abuse of the court's discretion,[1] the board argues that this rule is not applicable to justice courts because of their limited jurisdiction.
Both parties have cited various statutory provisions which they believe support their respective positions. However, in our opinion, the resolution of this question must be based, not on statutory authorization or lack thereof, but rather upon whether generally a court has an inherent power to compel the employment of necessary personnel, and if so, whether a justice court has that power. Also of importance are the limitations, if any, imposed upon the exercise of that power.
As recognized by the board, the general issue of whether a superior court has the power to control and employ necessary personnel has been decided in Arizona. See Mann v. County of Maricopa, supra (holding that a statute requiring "approval by the governing body of the political subdivision" for retention of employees beyond the age of 70, was not applicable to personnel of the superior court); Roylston v. Pima County, supra, (holding that a deputy clerk of the superior court was an officer of the court under the direct supervision of the judiciary and that the board of supervisors had only a ministerial duty to approve the appointment of such a deputy after approval by the superior court judge); Birdsall v. Pima County, supra, (holding that the board of supervisors had a ministerial duty to approve an order of the judge of the juvenile court fixing new salaries for employees of the juvenile court in the absence of a clear showing that the judge acted unreasonably, arbitrarily and capriciously in the fixing of salaries); also see Broomfield v. Maricopa County, 112 Ariz. 565, 544 P.2d 1080 (1975).
While conceding that the power to control the hiring and placement of judicial employees is vested in the superior court, the board argues that the inherent power accorded courts of general jurisdiction is inapplicable to justice courts because of Art. 6, § 32 of the Arizona Constitution, which provides:
The jurisdiction, powers and duties of courts inferior to the superior court and of the justice courts, and the terms of office of judges of such courts and justices of the peace shall be as provided by law. (Emphasis added).
Also see A.R.S. § 22-112, which provides in part that a justice of the peace shall:
Have the powers and perform the duties prescribed by law. (Emphasis added).
Based upon what the board perceives to be a constitutional limitation and the "power" limitation of A.R.S. § 22-112, it is urged that since there is no statutory authorization for justice courts to hire employees, this "power" must be reserved to the board of supervisors under A.R.S. § 11-251.[2]
*231 To answer this question, we must necessarily determine from what source the power of the judiciary to control its own employees is derived. It appears that the Arizona cases have come squarely down in favor of the proposition that the right of the judiciary to be independent from the influence and control of the other branches of government and hence its source of inherent power to control its own employees is founded in Article 3 of the Arizona Constitution, which provides:
The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.
See Broomfield v. Maricopa County, supra.
Authorities have identified two other sources of the power vested in the judiciary to provide itself with necessary personnel. First, the powers inhere in the court because of the very nature of the judicial power. United States v. Hudson, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812); State ex rel. Mahoney v. Superior Court, 78 Ariz. 74, 275 P.2d 887 (1954) ("powers spring not from legislation but from the nature and constitution of the tribunals themselves"); Clerk of Court's Compensation for Lyon County v. Lyon County Commissioners, 308 Minn. 172, 241 N.W.2d 781 (1976) ("Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court").
The second source of inherent power of a court to provide itself with necessities has been said to flow from the fact that a court is a constitutionally created entity. As stated in Judges for the Third Judicial Circuit v. County of Wayne, 386 Mich. 1, 190 N.W.2d 228, 231 (1971), cert. denied, 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1972):
We have never doubted the inherent power of a constitutional court to sustain its existence.
The Constitution established that the judicial power of the State is vested exclusively in one Court of Justice. The legislature may not abolish the court. Neither is it permissible for the legislature to render the court inoperative by refusing financial support.
Whether we hold that a court's power to provide for its necessary functions is derived (1) from the very nature of the judicial power, or (2) from the separation of powers provision of the constitution, or (3) from the right of a constitutionally created body to preserve its existence, all are applicable to justice courts in Arizona.
First, there is no doubt that justice courts exercise judicial power. See generally, Title 22, Arizona Revised Statutes. Second, justice of the peace courts are established by Art. 6, § 1 of the Arizona Constitution:
The judicial power shall be vested in an integrated judicial department consisting of a Supreme Court, such intermediate appellate courts as may be provided by law, a superior court, such courts inferior to the superior court as may be provided by law, and justice courts. (Emphasis added).
By such constitutional designation, justice courts are part of the judicial department under the separation of powers provision of Article 3 of the Arizona Constitution.
Simply because a justice court may have limited jurisdiction in the sense that its power to adjudicate certain types of litigation is more restrictive than the jurisdiction afforded other courts, does not mean that it does not possess the power to adjudicate or that it is not part of the judicial system. As part of that system, a justice court, for the same reasons that exist for a court of general jurisdiction, has the inherent power to provide for its necessary functioning as a court. Thus the power to provide for its existence flows from *232 the mandated function of a court  the administration of justice  rather than from its jurisdiction. See J. Connors, Inherent Power of the Courts  Management Tool or Rhetorical Weapon? 1 Justice System Journal 63 (Winter 1974). This was recognized in Carlson v. State ex rel Stodola, 247 Ind. 631, 220 N.E.2d 532 (1966):
The functions of a [court of limited jurisdiction]... are as truly judicial in character (although limited in scope) as that of any other court in the State of Indiana. In our view, in order for it to operate independently, freely and with absolute integrity, it is as important for it, if not more so than a higher court, not to be hampered and interferred with for lack of funds withheld by a local legislative body.
220 N.E.2d at 535.
We therefore hold that a justice court has the inherent power to require that personnel necessary for its function as a court be supplied by the board of supervisors. The board may only disregard such a request upon a showing that the justice court acted arbitrarily, capriciously or unreasonably.
While we hold that this power exists in justice courts, this does not mean that the power is without limitation. Some exercises of inherent judicial power, the contempt power for example, are directly related to the court's ability to decide controversies before it. Such inherent power does not impinge expressly upon the prerogatives of the other co-equal branches of government. However, when a court exercises its inherent power to compel funding for supplies and personnel, it runs directly into the constitutionally mandated power of the legislature to tax and appropriate funds. See generally, Ariz. Const., art. 4.
Just as the legislative or executive departments under the separation of powers provision of the constitution may not encroach upon the judicial function, neither may the judiciary encroach upon the legislative function, and budgeting matters are a part of such a function. Thus, under the tripartite constitutional system  one of checks and balances  an independent judiciary does not mean a judiciary which is entirely independent of these checks and balances. See, Note, State Court Assertion of Power to Determine and Demand its Own Budget, 120 U.Pa.L.Rev. 1187 (1972).
One of the checks on the other branches of government is the legislature's "power of the purse." To fail to recognize this power is to ignore the necessary interdependence of each branch of government which is built into our form of government.
This concept was recognized in Birdsall v. Pima County, 106 Ariz. at 269, 475 P.2d at 253:
An orderly fiscal policy is a governmental necessity and to order an increase in excess of budget provisions might be unreasonable, arbitrary and capricious.
Thus, while we recognize the inherent power of a justice court to require the providing of personnel in order to perform its necessary functions, this power should be exercised only when there is no established method for obtaining needed personnel or when a reasonable, good faith, diligent effort to utilize such methods has been attempted and has failed. See Millholen v. Riley, 211 Cal. 29, 293 P. 69 (1930); Clerk of the Court's Compensation for Lyon County v. Lyon County Commissioners, supra; State ex rel. Weinstein v. St. Louis County, 451 S.W.2d 99 (Mo. 1970); State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 P. 392 (1913).
In this case, Judge Reinhold refused to accept an invitation to discuss his request with the board of supervisors apparently on the basis that his bare request was sufficient. It was not. Mutual cooperation and an attempt to settle differences between the various branches of government is not only desirable, it is a legal prerequisite for the type of relief requested by Judge Reinhold.
Since the specific relief requested is now moot, we need not determine whether the trial court's judgment denying special action relief was proper. See State v. Superior *233 Court of Pima County, 86 Ariz. 231, 344 P.2d 736 (1959). However, the principles enunciated in this opinion are to be considered controlling in future cases involving this issue.
KLEINSCHMIDT, P.J., and GREER, J., concur.
NOTES
[1] See, e.g., Birdsall v. Pima County, 106 Ariz. 266, 475 P.2d 250 (1970); Roylston v. Pima County, 106 Ariz. 249, 475 P.2d 233 (1970); Mann v. County of Maricopa, 104 Ariz. 561, 456 P.2d 931 (1969); Powers v. Isley, 66 Ariz. 94, 183 P.2d 880 (1947).
[2] § 11-251(29) provides that the board of supervisors shall have the power to "[d]o and perform all other acts and things necessary to the full discharge of its duties as the legislative authority of the county government."