758 P.2d 1298

MARICOPA COUNTY, a body politic, and the Maricopa County Board of Supervisors, Tom Freestone, Fred Koory, Jr., George L. Campbell, Carole Carpenter and Ed Pastor, Petitioners,

v.

The Honorable B. Michael DANN, the Presiding Judge of the Superior Court, Respondents and Real Parties in Interest.

Nos. CV–88–0230–SA, CV–88–0250–SA.

Supreme Court of Arizona, En Banc.

July 18, 1988.

Thomas E. Collins, Maricopa Co. Atty. by Dean M. Wolcott, G. Eugene Neil, Deputy Maricopa Co. Attys., Lewis and Roca, Phoenix by John P. Frank, Susan M. Freeman, for petitioners.

Robert K. Corbin, Atty. Gen., Phoenix by Charles S. Pierson, Asst. Atty. Gen., Fred W. Stork, III, Chief Counsel, Civil Div., for respondents and real parties in interest.

HOLOHAN, Justice.

This matter arises out of two petitions for special action filed by the Board of Supervisors of Maricopa County. Petitioners request this court to exercise our original jurisdiction under Article VI, § 5 of the Arizona Constitution to review the actions of the respondent Presiding Judge of the Maricopa County Superior Court. The petitioners challenge the presiding judge's refusal to follow county policies in filling personnel positions and the judge's actions

in ordering members of the board to appear at hearings conducted by him.

The facts necessary for the resolution of these matters are not in dispute. The members of the board of supervisors over some period of time had been receiving information from their staff concerning the county's financial situation for the 1988–89 fiscal year. The anticipated expenses and projected income of the succeeding year disclosed a probable deficit situation. At a public meeting of the board on May 10, 1988, the members of the board received current information on the county's expected financial condition in the coming fiscal year. Staff advised members of the board that the county faced a deficit of at least $5 million to meet necessary county expenses. The county manager recommended an immediate hiring freeze, a moratorium on filling vacant personnel positions. The members of the board considered the recommendation and adopted it as a measure necessary to effect savings in the current fiscal year which could be carried over into the 1988–89 fiscal year.

To carry out the decision of the board, the county manager issued a memorandum to all elected officials, including the presiding judge of the superior court, outlining the board's decision to impose a moratorium on the filling of personnel positions. He also outlined the steps necessary to request an exemption from the hiring freeze for any particular personnel position, and explained that the denial of an exemption by staff could be appealed directly to the board of supervisors.

Prior to the May 10th meeting of the board of supervisors, the presiding judge had written to the board of supervisors expressing his willingness to cooperate in reducing expenditures in the court's budgets, but he noted that the court occupied a unique and independent status concerning funding which did not place the court under the control of the board of supervisors. He also pointed out that a hiring freeze would be counterproductive to the ability of the court to carry out its mission. The board of supervisors did not reply to the presiding judge's letter. On May 20, 1988, the presiding judge again advised the board that the court, as an independent branch, needed to be exempt from any hiring freeze and that the court would have to make the ultimate decision about filling positions. Again, the board of supervisors did not respond. On May 23, 1988, the presiding judge issued an administrative order ordering that county personnel initiate without delay all procedures and processes to facilitate the personnel actions required to fill the positions requested by the court. During the period May 23rd to June 13th twenty personnel requisitions were sent to the county personnel department. Each requisition was accompanied by a copy of the court's administrative order of May 23rd. Two of the twenty people requested by the court were authorized by the county because their employment fell within the blanket exemption to the hiring freeze. Six of the employees hired by the superior court had actually entered upon their duties without clearance from county personnel and despite the hiring freeze. The county issued paychecks to the six, but the county advised the employees that the matter was being contested and that the payment should not be considered to be approval of their employment by the board of supervisors. The remaining twelve persons on the requisitions were not acted upon by the county personnel department because the superior court had not followed the procedures required by the county to request an exemption from the hiring freeze.

On June 7, 1988, the board of supervisors, following the procedure suggested in our decision in *Broomfield v. Maricopa County*, 112 Ariz. 565, 544 P.2d 1080 (1975), sought the intervention of this court by filing a special action requesting that the actions of the respondent presiding judge be declared to be unreasonable and arbitrary and that the presiding judge should be directed to comply with the county's personnel procedures.

When the county personnel department did not act on the twelve personnel requests, the presiding judge issued an administrative order styled "Notice of Hearing to Determine Compliance with Adminis-

trative Order" which ordered the chairman of the board of supervisors, the county manager and the assistant county manager for personnel and finance to appear and testify at a hearing on June 10, 1988, to be conducted by the presiding judge to determine whether the previous administrative order concerning the employment of personnel was being implemented and obeyed.

After service of the presiding judge's order, the chairman of the board of supervisors filed a motion to dismiss and to quash notice of hearing, contending that the proceeding was not a legal one and that the presiding judge had no authority to order the chairman to appear at such a hearing. The chairman of the board also filed a motion for change of judge and change of venue. He contended that, if the proceeding before the presiding judge were considered to be a legal proceeding, he invoked his right to request a change of judge pursuant to the Rules of Civil Procedure and for change of venue pursuant to statute. The presiding judge denied the motions for change of judge and for change of venue. He ruled that he was not conducting a civil proceeding, therefore, the relief sought by the chairman of the board was not appropriate.

The chairman of the board and other members of the board filed a second petition for special action in this court challenging the authority of the presiding judge to proceed any further under his "Notice of Hearing" procedure. This court entered a stay of further proceedings pending a determination of this matter.

We accepted jurisdiction of these petitions to resolve the conflict between the parties.

This is not the first time that this court has had to address the issues raised by a conflict between the judiciary and another branch of government. *Deddens v. Cochise County*, 113 Ariz. 75, 546 P.2d 811 (1976); *Broomfield v. Maricopa County, supra; Birdsall v. Pima County*, 106 Ariz. 266, 475 P.2d 250 (1970); *Roylston v. Pima County*, 106 Ariz. 249, 475 P.2d 233 (1970); *Mann v. County of Maricopa*, 104 Ariz. 561, 456 P.2d 931 (1969); *Lockwood v.*

*Board of Supervisors*, 80 Ariz. 311, 297 P.2d 356 (1956); *Powers v. Isley*, 66 Ariz. 94, 183 P.2d 880 (1947). Our previous cases have clearly pointed out that the courts are an independent branch of government, that they have control over their personnel, that they have the right to appoint necessary personnel to carry out the court's constitutional and statutory duties, and that boards of supervisors have the duty of approving personnel requests of the courts unless there is a clear showing that the judges acted unreasonably, arbitrarily, or capriciously in making the request. We also recognized in *Birdsall v. Pima County, supra,* that an orderly fiscal policy is a governmental necessity and to order expenditures for personnel in excess of budget provisions might be unreasonable, arbitrary and capricious.

The presiding judge contends that the personnel that he has requested are authorized in the 1987–88 budget, and he has determined that they are necessary for the court's operation. The board of supervisors has failed to approve the appointments, but it has not challenged the appointments as unnecessary. The presiding judge argues that unless the board contends that the appointments are unnecessary and thus unreasonable, the board has only the ministerial duty of making the appointments.

The issue presented by the facts of this case is not precisely answered by our former cases. The board of supervisors does not directly challenge the necessity of the personnel requests, but it contends that the court is obligated to comply with the county personnel procedure regarding the filling of vacancies during the hiring freeze. It is the board's position that the presiding judge acted unreasonably and arbitrarily in completely ignoring the county personnel procedure for filling vacancies in personnel under the hiring freeze. The presiding judge has refused to request an exemption for the new personnel requested and has refused to make any showing of the necessity for hiring the new personnel despite the hiring freeze.

■ We believe that the position of the board has merit. The policy set by the board applies to all budgets in the county with a few exceptions, so it is not directed against the court alone. The policy is not designed nor intended to interfere with the statutory or constitutional functions of the court, and the policy allows for individual consideration of hiring requests based on necessity. Would cooperation by the court system with the county personnel policy interfere with the concept of judicial independence? We think not.

Our Court of Appeals in *Reinhold v. Board of Supervisors of Navajo County*, 139 Ariz. 227, 677 P.2d 1335 (App.1984), had occasion to discuss the principles applicable to the authority of a justice court to require a county board of supervisors to provide court personnel necessary for the efficient administration of that court. The case arose out of a dispute between the justice of the peace and the board of supervisors concerning the funding of a clerk for the justice court. The board was resisting the funding of a new position, but the board did offer to have the justice of the peace appear before them and justify the request. The justice of the peace declined, contending that it was unnecessary for him to justify the personnel request. The Court of Appeals' observations are most relevant to the present case:

Thus, while we recognize the inherent power of a justice court to require the providing of personnel in order to perform its necessary functions, this power should be exercised only when there is no established method for obtaining needed personnel or when a reasonable, good faith, diligent effort to utilize such methods has been attempted and has failed. (Citations omitted)

In this case, Judge Reinhold refused to accept an invitation to discuss his request with the board of supervisors apparently on the basis that his bare request was sufficient. It was not. Mutual cooperation and an attempt to settle differences between the various branches of government is not only desirable, it

is a legal prerequisite for the type of relief requested by Judge Reinhold. 139 Ariz. at 232, 677 P.2d at 1340.

The presiding judge took the position that the court did not have to comply with the county procedure for requesting exemptions from the hiring freeze. He was in error. From our review of the record we believe that the county procedure presented a reasonable method for obtaining needed personnel, and that the presiding judge should have utilized the method. We do not see any compelling necessity for not following the county procedure. There is nothing in the job titles of some of the requested positions which suggests why they are essential to the administration of the court system. Four of the requested personnel are summer aides; another is an "on-call position;" two are microfilm operators and four are bailiffs. It certainly does not appear unreasonable for the county, in its present financial crisis, to expect the superior court to cooperate with the board's efforts to reduce expenditures, and the court, if it must have the personnel, should make the showing of necessity required under the county procedure.

■ If the presiding judge follows the county personnel procedure to request the hiring of personnel necessary for the court's operation, and the board of supervisors rejects his request, the presiding judge, under the authorities cited earlier, may order the employment of the personnel subject to the right of the board of supervisors to challenge that decision in a special action filed in this court. *Broomfield v. Maricopa County, supra.*

The presiding judge suggests that the board's method of meeting the financial crisis is not an effective one. There may be merit in this position if it were relevant to the case, but the policy decision, right or wrong, to use the fiscal measures adopted by the board is one which belongs to that branch of government. The power and responsibility for producing a balanced county budget rests with the board of supervisors. A.R.S. § 42–304.

■ There is an additional matter which deserves comment. The board of supervi-

sors imposed the hiring freeze beginning in the fiscal year 1987–88. The board conceded that there were sufficient funds to meet the budgeted obligation of that fiscal year. The hiring freeze was designed to save money and create a surplus to be carried over to the 1988–89 fiscal year. May the board of supervisors impose a reduction of expenditures in a duly adopted and existing budget? The controlling statutes indicate that, in the absence of an emergency, the board may not alter an existing budget.

The process for developing the county budget and fixing a tax rate is a matter controlled and set out in some detail in Title 42 of the Arizona Revised Statutes. The process begins in the preceding fiscal year and, pursuant to A.R.S. § 42–302, must result in the production of a tentative budget on or before the third Monday in July of the new fiscal year. The board must hold a public hearing on the proposed expenditures in the tentative budget, A.R.S. § 42–303(A), and after the hearing must adopt a final budget which may not exceed the amounts proposed in the tentative budget. A.R.S. § 42–303(B) and (C). Thereafter A.R.S. § 42–303(D) provides that expenditures shall be limited to the amounts and for the purposes included in the budget. The only exception is that contained in A.R.S. § 42–303(E) which provides:

> E. In the case of an emergency, the governing board, on the affirmative vote of a majority of the members at a public meeting, may authorize the transfer of funds between budget items of an adopted budget if the funds are available and the transfer does not result in a violation of the limitations provided in article IX, §§ 19 and 20, Constitution of Arizona.

■ Did the financial crisis facing the county in the 1988–89 fiscal year constitute the type of emergency situation which would allow the board of supervisors to transfer funds between budget items in the 1987–88 fiscal year? We believe it did. Although the financial crisis would occur in the 1988–89 fiscal year, the situation faced by the county at the beginning of the fiscal

year was of such a nature that the board of supervisors was justified in taking action in the 1987–88 fiscal year to attempt to meet the financial crisis facing the county in the next fiscal year.

Although the county did not express their proposed action in the terms used in the statute, it is obvious that the county was, in effect, attempting to transfer funds from the personal service budgets of the various county agencies to the contingency fund. The funds transferred to the contingency fund would be retained unexpended which would create a surplus to be carried forward into the new fiscal year. A.R.S. § 42–304(A).

We are satisfied that the board of supervisors acted within their statutory authority in dealing with the expected financial emergency as they did.

■ The final matter presented for resolution concerns the hearing procedure undertaken by the presiding judge. The record reflects that the presiding judge indicated that the matter was not a civil proceeding; that it was not a hearing to hold anyone in contempt; that it was an administrative inquiry to assist the presiding judge in gathering information about his ordered personnel actions.

Article VI § 11 of the Arizona Constitution sets forth the powers of the presiding judge. In addition, Rule I of the Uniform Rules of Practice of the Superior Court also lists additional powers granted to him by this court. There are several statutory provisions which provide specific authority to the presiding judge, particularly in the area of appointing court personnel. There is no specific authority for the presiding judge to conduct administrative hearings and to order attendance by nonjudicial personnel. While we do not reject the notion that the presiding judge may conduct administrative hearings to gain information to guide his decisions in administrative matters, we do reject the claim that the presiding judge has the authority in a purely administrative matter to order non-court personnel to appear before him. In civil and criminal matters we have long adhered to the notion that a party may disqualify

one judge and have the case transferred to another judge. There is no procedure for change of judge in an administrative proceeding before the presiding judge. As we view the situation, such a procedure is not necessary because the presiding judge has no authority to compel persons outside the judiciary to become involved in such matters.

## SUMMARY

The board of supervisors did not act unreasonably in requiring the superior court and its departments to submit requests for employment of necessary court personnel in the same manner that was required for all other county departments. The presiding judge of the superior court must follow the county procedure to request employment of necessary court personnel. The administrative hearing procedure followed by the presiding judge in this matter is not authorized by rule or law. Therefore, the presiding judge is directed to vacate the various personnel orders directing the employment of court personnel covered by the hiring freeze, and the presiding judge is directed to follow the county procedure prescribed for securing employment of necessary personnel. The presiding judge is further directed to grant the motion of the chairman of the board of supervisors to dismiss and quash the notice of hearing, and the presiding judge is further directed to vacate all other orders compelling the attendance of persons not employed by the court system to attend any further administrative hearings conducted by the presiding judge concerning the hiring freeze.

GORDON, C.J., FELDMAN, V.C.J. and CAMERON and MOELLER, JJ., concur.