875 P.2d 1306

Dennis Allen RIDENOUR, Petitioner,

v.

Honorable Jonathan H. SCHWARTZ, Judge, Maricopa County Superior Court, State of Arizona, Respondent,

and

STATE of Arizona ex rel. Grant WOODS, Arizona Attorney General, Real Party in Interest.

No. CV–94–0136–SA.

Supreme Court of Arizona, En Banc.

June 7, 1994.

Orest A. Jejna, Phoenix, for petitioner.

Grant Woods, Atty. Gen. By Paul J. McMurdie, Chief Counsel, Criminal Appeals Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for real party in interest.

Richard M. Romley, Maricopa County Atty. by Gerald R. Grant, Phoenix, for respondent.

Scult, French, Zwillinger & Smock, P.A. By James F. Henderson, Patricia A. Sallen, Phoenix, for amicus curiae Phoenix Newspapers, Inc.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

On March 28, 1994, the presiding judge of the Maricopa County Superior Court issued an administrative order restricting public access to the court buildings after 3:00 p.m. For the remainder of the fiscal year, those persons not in the court buildings prior to 3:00 p.m. would be denied access to observe trials or other court proceedings until the next court day. In this special action, we are asked to determine whether this administrative order denied defendant his constitutional right to a public trial or is otherwise impermissible. We accept and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(1) and A.R.S. § 12–120.21(A)(3).

### FACTUAL AND PROCEDURAL BACKGROUND

In response to a county budgetary crisis, on March 25, 1994, the Honorable C. Kimball Rose, Presiding Judge of the Maricopa County Superior Court, issued Administrative Order 94–021, an extensive attempt by the court to "contain expenditures and enhance revenues." In the order, Judge Rose explained that he was taking the various cost-reducing measures listed therein in order to meet a "target figure" reduction in expenditures—a reduction requested by the Maricopa County Board of Supervisors as part of its "good faith, drastic expenditure reduction" plan for the remainder of the fiscal year.[1] Judge Rose correctly acknowledged that the court has a duty to make a "good faith effort" to assist the county in its endeavor, but he also correctly noted that this "good faith effort does not require that the 'target figure' be met without regard to the consequences to the administration of justice." See, e.g., Maricopa County v. Dann, 157 Ariz. 396, 399, 758 P.2d 1298, 1301 (1988) (presiding judge must make good faith effort to comply with reasonable county procedures and requests designed to reduce county ex-

penses during budgetary crises). Although he explained that the measures taken were an effort to "wisely contain ... expenditures without impairing or destroying the administration of justice," the record fails to disclose whether his good faith effort included the exhaustion of measures less drastic than restriction of public access.

Among various other mandates, paragraphs 1 and 2 of Administrative Order 94–021, in pertinent part, provide that:

1. Starting at 12:01 a.m. Monday, March 28, 1994 and until midnight, Friday, July 1, 1994, public access hours to the [Maricopa County Court Buildings] ... will be 8:00 a.m. to 3:00 p.m., Monday through Friday. This means entry to these court facilities after 3:00 p.m. will be restricted.

.     .     .     .     .

2. Court business inside the [courthouses] will continue as usual with trials and other proceedings presumptively ending at 5:00 p.m. It is neither intended, nor implied, that the Court Institution will cease operation at 3:00 p.m. on any court day.

In effect, then, the administrative order limits public access to court proceedings that continue after 3:00 p.m. to those persons who are in the courthouse before 3:00 p.m. The intent of this portion of the administrative order was to reduce the cost of providing security at the courthouse and to permit the clerical and administrative staff to do work it cannot do with a reduced staff while the public also has access.

When Administrative Order 94–021 went into effect, defendant's trial was in its seventh week and was proceeding on a schedule of 1:00 p.m. to approximately 4:45 p.m. each day. On March 28, 1994, the first day the order was in effect, defendant made an oral motion for a public trial or, in the alternative, to dismiss, which the trial judge denied. The next day, defendant filed a written motion to reconsider, arguing, among other things, that the administrative order denied him his right to a public trial and violated various constitutional and statutory provisions relating to the

---

1. At the time Judge Rose issued the order, the Maricopa County General Fund had a projected deficit of $22 million for the 1993–94 fiscal year.

The county asked each entity funded by it to reduce expenses in an attempt to make up this deficit.

time that the courthouse should remain open. He also filed a motion for stay until this court could resolve the matter. The trial judge denied both motions.

On March 31, 1994, defendant filed a petition for special action in this court with a request for a stay of his trial or, in the alternative, a mistrial, together with a request for an emergency conference and oral argument. On April 1, 1994, this court's duty justice suspended the implementation of paragraph 1 of Administrative Order 94–021 pending further order of this court. On April 19, 1994, the court heard oral arguments on this matter, and continued the stay order pending filing of this opinion.[2]

We granted Phoenix Newspapers, Inc.'s request to appear as amicus curiae, and it argues that the administrative order unconstitutionally denies the press and the public access to observe trials as guaranteed by the First Amendment.

## ISSUE

Whether paragraph 1 of Administrative Order 94–021, which limits public access to the courthouse to those persons in the courthouse before 3:00 p.m., denied defendant his right to a public trial or is otherwise impermissible.

## DISCUSSION

■ It is undisputed that a defendant in a criminal case has a constitutional right to a public trial. U.S. Const., amend. VI; Ariz. Const. art. 2, § 24. It is also undisputed that the public has a constitutional and common law right of access to observe court proceedings. U.S. Const., amend. I; Ariz. Const., art. 2, § 11 and art. 6, § 17; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–69, 100 S.Ct. 2814, 2820–23, 65 L.Ed.2d 973 (1980); *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1066–71 (3d Cir.1984); *Phoenix Newspapers, Inc. v. Jennings*, 107 Ariz. 557, 560, 490 P.2d 563, 566 (1971). These constitutional commands are implemented by statute and court rules specifying

hours of court. *See, e.g.,* A.R.S. §§ 11–413, 11–413.01, 12–127, and 38–401; Rule 77, Ariz. R.Civ.P.; Rules 1.1(a) and 1.1(b), Maricopa County Local Rules of Court. In this special action, we hold that Administrative Order 94–021 did not, during the brief period it was in effect, impermissibly deny defendant his right to a public trial, but would, if permitted to remain in force, unconstitutionally infringe on the general public's right of access to observe and attend court proceedings. We discuss each issue separately.

## I. The Right to a Public Trial

■ Both the United States and Arizona Constitutions guarantee defendant the right to a public trial. U.S. Const., amend. VI; Ariz. Const. art. 2, § 24. Because the value of the public trial guarantee to the judicial system is incalculable, we carefully scrutinize any trial court order that denies, restricts or limits a defendant's right to a public trial. Thus, any order closing the court to the public must be necessitated by a compelling governmental interest and be narrowly tailored to serve that interest. *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 10, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1 (1986). If an order is merely a temporary limitation of access, however, it may be sustained if it is reasonable and neutral. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 n. 17, 102 S.Ct. 2613, 2620 n. 17, 73 L.Ed.2d 248 (1982); *United States v. Kerley*, 753 F.2d 617, 620 (7th Cir.1985).

■ In this case, we do not think Administrative Order 94–021, as it was implemented and as it affected defendant's trial, can be characterized as a closure of defendant's trial. The courtroom was not *closed* to the public. The courtroom was never cleared of spectators. No one who wanted to attend the trial was denied entry if that person was present in the court building before 3:00 p.m. Because defendant's trial was several weeks in progress at the time of the order, and because the order was publicized prior to its implementation, those wishing to attend defendant's trial had ample notice that they

---

**2.** On April 26, 1994, defendant was found guilty of several counts; he has since renewed his request for a mistrial.

**4**

would have to be in the courthouse before 3:00 p.m. Most importantly, the administrative order was in effect for only small portions of only 4 days of defendant's trial, which lasted over 10 weeks. Under these circumstances, we do not believe the order can be characterized as a closure of the courtroom. It was, rather, a temporary limitation of access, neutral in application, and of limited, if any, effect. Defendant was not denied his right to a public trial. *See State v. Von Reeden*, 104 Ariz. 404, 405, 454 P.2d 149, 150 (1969) ("That the circumstances were such as to make access to the courtroom somewhat more complicated than usual ... does not obviate the fact that the trial was open to the public.").

## II. The Public's Right of Access

■ We do not think, however, that Administrative Order 94–021 can withstand constitutional scrutiny from the public's perspective. The presiding judge's order purports to limit *all* public access to trials and court proceedings after 3:00 p.m. each day. Moreover, by its terms, the order was intended to remain in effect for longer than 3 months. Because the order purports to limit public access to all court proceedings over a substantial period of time, it may only be characterized as an attempt to partially close the court.

Such an attempt to partially close the entire courthouse complex must be considered an unconstitutional denial of public access. Article 2, section 11 of the Arizona Constitution requires that "[j]ustice in all cases shall be administered openly." The "open administration" clause forbids general orders such as Administrative Order 94–021, which significantly interfere with free and open access to the courthouse. *Phoenix Newspapers*, 107 Ariz. at 560, 490 P.2d at 566; *see also Allied Daily Newspapers v. Eikenberry*, 121 Wash.2d 205, 848 P.2d 1258, 1261 (1993). The "open administration" clause permits closing a courtroom only for case-specific reasons for which closure is traditionally permitted (i.e., overcrowded courtroom, witness protection, etc.). *Id.* The presiding judge here had no case-specific reason to limit public access. Indeed, the order covered all proceedings in all cases after 3:00 p.m.

■ Nevertheless, even if we did, in limited circumstances, permit general court closing orders, the particular order under consideration here would be unconstitutional in any event. If less drastic alternatives were available to implement the court's duty to exercise good faith efforts during the county's financial crisis, the presiding judge was compelled to have opted for those less drastic alternatives. *See Globe Newspaper*, 457 U.S. at 606–07, 102 S.Ct. at 2620 (order closing the court must be narrowly tailored to serve compelling government interest). If less drastic alternatives were not available, the order still would be unconstitutional on separation of powers grounds: the legislative or executive branches cannot, through lack of proper planning, budgeting or funding, require the judicial branch to take cost-cutting measures so severe that the operation of the judicial system cannot be carried out in a constitutional manner. *See, e.g., Dann*, 157 Ariz. at 398, 758 P.2d at 1300 (courts, as an independent branch of government, have right to appoint "necessary personnel" to carry out constitutional and statutory obligations); *United States v. Superior Court*, 144 Ariz. 265, 278, 697 P.2d 658, 671 (1985) (legislature cannot take actions that "unreasonably limit or hamper" the judicial system in performing its duties). Particularly given the volume of work in our courts today, it is not permissible for another branch of government to convert the third and equal judicial branch into a part-time operation.

### DISPOSITION

On the specific facts of the record presently before us, defendant was not denied his constitutional right to a public trial. Therefore, we deny his request for a mistrial. However, because paragraph 1 of Administrative Order 94–021 unconstitutionally limits public access to the judicial system, we grant his request to vacate it and to permanently stay its enforcement.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.