904 P.2d 1236

**MARICOPA COUNTY, a body politic and the Maricopa County Board of Supervisors, Tom Rawles, Don Stapley, Betsey Bayless, Ed King, and Mary Rose Garrido Wilcox, Petitioners,**

v.

**Hon. William H. TINNEY, Judge, Hon. C. Kimball Rose, Presiding Judge and Hon. Daniel A. Barker, Judge, Judges of the Superior Court of the State of Arizona, Respondents.**

No. CV–95–0070–SA.

Supreme Court of Arizona.

Nov. 9, 1995.

Richard M. Romley, Maricopa County Attorney by William P. French, Special Deputy County Attorney, Jessica Gifford Funkhouser, Shawn H. Nau, Dean M. Wolcott, Christopher C. Keller, Deputy County Attorneys, Phoenix, for Petitioners.

Roush, McCracken & Guerrero by Charles D. Roush, and Warner Angle Roper & Hallam, P.C. by Jerry L. Angle, Jerome K. Elwell, Phoenix, for Respondents.

OPINION

ZLAKET, Justice.

The Maricopa County Board of Supervisors, battling a 67 million dollar deficit, imposed a county-wide "hiring freeze" on December 14, 1994. Exemptions from this freeze required a showing of individual necessity for each position to be filled with a new employee.

Two weeks following enactment of this policy, the Presiding Judge of the Maricopa County Superior Court, C. Kimball Rose, submitted requisition forms for several new employees, including a replacement bailiff for Judge Daniel A. Barker. Judge Barker's bailiff was planning to retire in January. Judge Rose informed the supervisors that if the position was not funded by January 29, 1995, he would nevertheless issue orders to fill the job that day. County administrators advised him that they might have difficulty meeting this deadline but promised to expedite the review process as a courtesy to the court.

In an attempt to determine whether it was necessary to hire the new employees, the supervisors sent Judge Rose fourteen specific questions about the needs and resources of the superior court. A day later, the judge submitted written documentation that he believed contained the answers to those questions. After analyzing the information provided and deciding that it was incomplete, the supervisors requested an opportunity to have a job analyst observe bailiffs and judicial assistants performing their duties. The analyst reported that the domestic relations division Judge Rose allowed her to attend had been very busy. However, because none of the judges for whom the court was requesting new staff were assigned domestic relations cases, she viewed several other civil and criminal divisions on her own initiative. These appeared to be much less active, prompting the analyst to suggest that fur-

ther study was needed to determine whether the court could use current employees more efficiently.

Meanwhile, Judge Barker had already made an offer to an applicant for the bailiff position, and on January 17, Judge Rose informed the supervisors that the new employee would begin work on or about January 26. The supervisors, expressing the need for further analysis, requested a two-week extension of the court's deadline. Judge Rose, who had already made significant budget concessions on behalf of the court in a cooperative effort to cope with the fiscal crisis, rejected this request.

At a board of supervisors' meeting the following morning, Judge Rose declined to make any further showing that the positions he wanted to fill were necessary, stating instead that under the relevant statutes the supervisors did not have the power to question his determination that the employees were needed. The supervisors thereupon denied the court's request for exemptions from the hiring freeze.

On January 19, Judges Rose and Barker entered an order directing the supervisors to fund the new bailiff's salary. Judge Rose thereafter scheduled an "administrative hearing" before Judge Robert B. Buchanan of the Pima County Superior Court. The board of supervisors was invited, but not ordered,[1] to attend and present evidence demonstrating that the court's actions had been unreasonable. The supervisors requested that the superior court recuse itself, arguing that to have the court determine its own spending power, as well as the validity of its own conduct, created at least an appearance of impropriety. They suggested that a judge pro tem or a special panel be assigned to hear the matter. Judge Buchanan declined to rule on the motion and recused himself because one party (the superior court) had selected him without input from the other. The court's counsel then asked the presiding judge of Pima County to randomly pick someone from his bench to act as the hearing

officer. Judge William H. Tinney of the Pima County Superior Court was selected.

Judge Tinney denied the board's request to appoint a special panel and presided over the hearing himself. He received evidence regarding Judge Barker's need to have his own bailiff, found that the new employee was indeed justified, and ordered the supervisors to fund the position. Most of what was offered by the superior court at this hearing had not previously been presented to the board of supervisors. Following Judge Tinney's order, the supervisors filed this petition for special action. We have jurisdiction under Ariz. Const. art. VI, § 5.

The outcome of this case is controlled by our opinion in *Maricopa County v. Dann*, 157 Ariz. 396, 758 P.2d 1298 (1988). We agree with the superior court that to prevail, the supervisors are required to show that the judges in question acted unreasonably, arbitrarily, or capriciously in issuing orders to fund the new bailiff. Judicial officers "have the right to appoint necessary personnel to carry out the court's constitutional and statutory duties, and ... boards of supervisors have the duty of approving personnel requests of the courts unless there is a clear showing that the judges acted unreasonably, arbitrarily, or capriciously in making the request." *Id.* at 398, 758 P.2d at 1300. *See also Broomfield v. Maricopa County*, 112 Ariz. 565, 568, 544 P.2d 1080, 1083 (1975). In *Dann*, however, we also made it clear that a presiding judge acts unreasonably and arbitrarily in refusing to follow reasonable county procedures for filling vacancies during a hiring freeze. 157 Ariz. at 398–99, 758 P.2d at 1300–01.

Contrary to the assertions of the superior court, it appears that the procedures here were not limited to the mere filing of requisition forms. The supervisors also specifically requested a showing of individual necessity for every new hire. In correspondence from the board to Judge Rose early in the exemption process, the court was informed that a "review" of the need for the requested employees would be performed. There appears

---

1. The presiding judge had no authority to compel the attendance of nonjudicial personnel at an administrative hearing. *Maricopa County v. Dann*, 157 Ariz. 396, 400, 758 P.2d 1298, 1302 (1988).

to have been nothing unfair or unduly burdensome about this procedure, nor is there any basis in the record upon which to speculate that such reviews were not routinely required of others, as the superior court seems to imply.

At the board of supervisors' hearing, Judge Rose maintained that he was not obligated to do anything beyond submitting requisition forms because A.R.S. § 12–231 specifically provides that superior court judges "may appoint such bailiffs as are necessary to insure orderly transaction of the business of the court." However, this statutory language is permissive rather than mandatory. Moreover, in *Dann*, four of the employees at issue were bailiffs, and we nevertheless held that courts must demonstrate necessity if such a showing is reasonably required under procedures adopted pursuant to a county-wide hiring freeze. 157 Ariz. at 399, 758 P.2d at 1301. In times of financial difficulty, it is not unrealistic to expect the judiciary to cooperate with the legislative branch of government in working within restricted budgets. *Id.*

Here, the court maintains that it made a proper showing of necessity. We disagree. As part of the supervisors' review, Judge Rose was sent a list of questions concerning the need for new employees. These questions were not, as the court now claims, answered "in detail" and "in order to assist the supervisors in understanding the necessity for this bailiff." In fact, information provided in answer to the first two questions, concerning the possibilities of assigning a retiring judge's bailiff to another division or having two judges share a bailiff, was largely unresponsive. Additionally, much of the submitted documentation was simply irrelevant to the questions asked.

We decline to consider evidence that was presented only to Judge Tinney in determining whether the superior court fairly demonstrated a need for Judge Barker's new bailiff. The question before us concerns the adequacy of the court's showing before the board of supervisors. While it is true that Judge Rose was empowered to conduct a hearing "to gain information to guide his decisions in administrative matters," *Dann*, 157 Ariz. at 400, 758 P.2d at 1302, the proceedings before Judge Tinney went beyond mere fact-finding. They were unquestionably adversarial and, in our view, inappropriate. Developing a courtroom record demonstrating need and procuring an additional order from yet another superior court judge did not cure the earlier failure to comply with the reasonable requests of the county supervisors. Once Judges Rose and Barker had entered the original order regarding employment, the matter was ripe for this special action, with or without the subsequent hearing.

Today's decision should not be viewed as a retreat from the inherent power of courts to preserve the judicial branch of government and our justice system, even to the extent of ordering, where necessary, the allocation of sufficient funding. Such an extreme measure, however, should be employed only under extraordinary circumstances and as a last resort after reasonable avenues of cooperation and compromise have been exhausted. Any holding to the contrary would threaten our unique constitutional system of checks and balances among equal and independent branches of government. While we have no doubt that the presiding judge was responding in good faith to what he perceived as an unreasonable attempt to restrict and control the operation of the court for which he was responsible, it does not appear to us that the narrow issue presented was sufficient to justify the measures taken here.[2]

Considering, as we must, only the evidence that was before the board of supervisors at the time of its decision, we hold that the court's efforts to demonstrate necessity were inadequate. We therefore reverse the orders directing that the supervisors fund the new bailiff position and remand for further proceedings consistent with this opinion.

---

**2.** At oral argument before us, counsel agreed that the budget item in question had already been resolved for the coming fiscal year and was no longer in controversy. Thus, the orders under consideration effectively concerned the funding of one bailiff's position for a four month period in the face of severe budget constraints and a sizeable pool of such employees already attached to the superior court.

FELDMAN, C.J., CORCORAN, MARTONE, JJ., and WILLIAM E. DRUKE, Judge, Court of Appeals, concur.

MOELLER, V.C.J., did not participate in this matter. Pursuant to Ariz. Const. art. 6, § 3, WILLIAM E. DRUKE, J., of the Court of Appeals, Division Two, was designated to sit in his stead.